# STATE OF MICHIGAN

# COURT OF APPEALS

---

CAROLYN ANDERSON,

       Plaintiff-Appellant,

and

AMERICAN ANESTHESIA ASSOCIATES,
SPINE SPECIALISTS OF MICHIGAN, and
OMEGA REHAB SERVICES, LLC,

       Intervening Plaintiffs,

v

MICHAEL ROY CLAY,

       Defendant,

and

AMERICAN COUNTRY INSURANCE
COMPANY,

       Defendant-Appellee.

UNPUBLISHED
July 31, 2018

No. 336999
Wayne Circuit Court
LC No. 15-008247-NF

---

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

      Plaintiff, Carolyn Anderson, appeals the trial court's grant of summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant American Country Insurance Company (ACIC). ACIC argued that Anderson fraudulently misrepresented several aspects of her claim for benefits arising out of a September 2014 accident, including preexisting injuries and her receipt of Social Security benefits. Because the trial court did not articulate any reasons for granting ACIC's motion and because ACIC misconstrued some of the evidence, we reverse the trial court's grant of summary disposition and remand for further proceedings.

## I. BACKGROUND

-1-

In September 2010, while working as a patient transporter at a medical center, Anderson flipped over a stretcher. After this work accident, she complained of pain in her neck, back, and right leg. Anderson's doctor first certified her disabled from work in March 2012. In September or October 2012, Anderson began receiving Social Security benefits for injuries sustained in the September 2010 accident. Following the September 2010 accident, Anderson received attendant care and household services on and off for about three years, through October 2013.

Anderson began working as a driver for Sadell's Transportation around May 2014. On the morning of September 4, 2014, she was driving to pick up a patient when the car she was driving was rear-ended. After the accident, Anderson complained of pain in her neck and back that radiated into her arms and left leg. Starting the day of the accident, Anderson's fiancé, Costello Hickson, began providing Anderson with household services and attendant care.

In November 2014, Anderson applied for personal protection insurance (PIP) benefits. When ACIC refused to pay, Anderson filed a complaint. After discovery, ACIC moved for summary disposition under MCR 2.116(C)(10), arguing that Anderson fraudulently misrepresented several aspects of her claim. First, ACIC maintained that Anderson testified that she did not require household services or attendant care before the 2014 accident when her medical records show otherwise. Second, ACIC stated that Anderson wrongly denied receiving workers' compensation, Social Security payments, or any other wage loss benefits, and ACIC contended that Anderson was perpetrating fraud on the Social Security Administration. Third, ACIC added that Anderson claimed no complaints and no medical treatment for her neck or back before the 2014 accident, contrary to her medical records. Fourth, ACIC argued that Anderson overrepresented the amount of care Hickson could have provided in light of his work schedule. The trial court agreed and granted ACIC's motion for summary disposition.

## II. DISCUSSION

This Court reviews a grant of summary disposition under MCR 2.116(C)(10) de novo. *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014). Summary disposition is appropriate if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

The trial court is not permitted to make findings of fact or assess credibility at the summary disposition stage. *Lima Twp v Bateson*, 302 Mich App 483, 492; 838 NW2d 898 (2013).

Insurance policies are contracts, and this Court applies the rules of contract interpretation when construing an insurance policy. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d

23 (2005). The unambiguous terms of a contract govern, and courts do not have the authority to modify unambiguous terms. *Id*.

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686; 555 NW2d 1 (1996), rev'd in part on other grounds 455 Mich 866 (1997) (citation omitted).]

When an insurance company asserts a fraud exclusion barring payment of benefits, it bears the burden of demonstrating fraud by a preponderance of the evidence. *Stein v Home-Owners Ins Co*, 303 Mich App 382, 387-391; 843 NW2d 780 (2013).

A trial court is not required to state findings of fact and conclusions of law when deciding a motion, MCR 2.517(A)(4), and cannot make factual findings when ruling on a motion for summary disposition, *Lima Twp*, 302 Mich App at 492. Nonetheless, the trial court did not explain its reasoning except to agree with ACIC, so remand for articulation of the trial court's reasoning is necessary to "facilitate appellate review." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 177; 530 NW2d 772 (1995). Remand is particularly necessary because ACIC misconstrued some of the evidence, and we cannot discern to what extent ACIC's misinterpretation of the evidence influenced the trial court's decision.

ACIC has likened this case to *Bahri*, 308 Mich App at 425-426, in which this Court affirmed the trial court's grant of summary disposition because the plaintiff misrepresented her claim for PIP benefits. In *Bahri*, the plaintiff submitted a statement for replacement services that predated the accident, and she requested reimbursement for replacement services for activities that she alleged she could not do when the insurance company produced surveillance video showing the plaintiff performing those activities. *Id*.

Other insurance fraud cases have similarly clear evidence of fraud. For example, this Court agreed with an insurance company's assertion of fraud when evidence showed that the plaintiff forged his brother's signature on calendars showing that the brother provided replacement services for three months when the plaintiff in fact moved to another city to live with his girlfriend, who then took over providing replacement services. *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 776, 781-782; 910 NW2d 666 (2017). This Court also affirmed a trial court's conclusion that the injured party's parents could not have provided 24/7 care for their son because he was incarcerated for part of the claimed time period and the services they provided during his incarceration were "not properly compensable as attendant care services." *Meemic Ins Co v Fortson*, ___ Mich App ___, ___; ___ NW2d ____ (2018) (Docket No. 337728); slip op at 2-3.

In contrast, a recent unpublished opinion rejects an assertion of fraud. *Cox v Farm Bureau Mut Ins Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued

June 14, 2018 (Docket No. 336326). The trial court concluded that the plaintiff's request for replacement services was inconsistent with his payment for a rental car while he was disabled and seeking replacement services. *Id*. at 7. This Court rejected that inconsistency as a basis for "fraud *as a matter of law*." *Id*. Other reasonable inferences arose from the evidence that gave rise to a genuine issue of material fact. *Id*. at 7-9. The inconsistencies cited in this case are similar to the level of inconsistencies described in *Cox*, unpub op.

ACIC first contended that Anderson's medical records show that she needed replacement services and attendant care before the 2014 accident, contrary to her testimony that she did not. ACIC is incorrect that Anderson required attendant care through March 2014. The discharge instructions ACIC cited for epidural injections in January, February, and March 2014 merely recommend that an adult stay with Anderson for the day and night following each procedure. These instructions do not show that Anderson required attendant care through March 2014. On the contrary, there is no evidence that Anderson received attendant care after October 2013, when her doctor's treatment plan that included replacement services ended. Moreover, although Anderson answered that she did not require these types of services before the September 2014 accident, she listed home health care in August 2013 in her written discovery. ACIC's exaggeration of the significance of the 2014 discharge instructions, combined with Anderson's disclosure that she had home health care in August 2013, undermine this first assertion of fraud.

Second, ACIC contends that Anderson did not disclose her preexisting medical conditions and treatment, which were the same following the accident. When she applied for PIP benefits after the September 2014 accident, Anderson indicated that she received medical treatment for the same or similar injuries before the accident, and she provided her doctor's name and address. ACIC later obtained medical records from this doctor. Anderson further described her injuries and medical treatment before the accident both in written discovery and at her deposition, including injuries to her "upper neck spine[.]" ACIC is correct that, at her deposition, Anderson denied being treated for neck pain before the accident. ACIC incorrectly maintains that Anderson complained of neck pain to her doctor two months before the accident when the April and July 2014 medical notes show that she only complained of back pain. She had epidural steroid injections in her cervical spine in early 2014 that alleviated her neck pain. Moreover, Anderson required more aggressive treatment for neck pain after the September 2014 accident than at any time before the accident. ACIC also places too much significance on Anderson's claim that she felt "fine" before the September 2014 accident because she qualified that statement by noting continued pain in her back and legs. Anderson was able to care for herself in the months before the accident, compared to when she required attendant services in the fall of 2013, so her qualified statement that she felt "fine" does not carry the significance ACIC assigned to it.

Further, ACIC emphasizes Anderson's testimony that a doctor did not recommend surgery after her 2011 surgery but before the September 2014 accident. At her deposition, Anderson first answered yes to the question whether a doctor recommended lumbar surgery, but explained that her doctor recommended a preventive measure that was not surgery, before answering no the second time she was asked if her doctor recommended lumbar surgery. Anderson's explanation was consistent with her medical records, in which her doctor recommended a trial dorsal column stimulator in August 2013. Her doctor described it as "the least invasive procedure" compared to surgery, reasonably leading Anderson to understand that it

-4-

was not surgery. In addition, ACIC misquotes the July 2014 notes to argue that her doctor recommended surgery shortly before the September 2014 accident. In the July 2014 notes, Anderson's doctor advised that further surgery was a *potential risk* of the trial dorsal column stimulator procedure, not a recommended course of action. ACIC identified some inconsistencies regarding Anderson's medical history, but its misinterpretation of some of the evidence weakens its contention that Anderson fraudulently concealed information about her medical history and treatment.

ACIC next contends that Anderson fraudulently concealed her receipt of Social Security benefits before the September 2014 accident because she checked no in response to the question whether she received workers' compensation, Social Security, or any other wage loss benefits on the application for PIP benefits. Anderson countered that she believed this question to relate to the accident at issue, i.e., the September 2014 accident, because the preceding and subsequent questions were specific to the accident at issue. Anderson revealed her receipt of Social Security benefits for injuries sustained in the September 2010 work accident both in written discovery and at her deposition. Additionally, Anderson agreed that she stopped working after the 2010 accident and testified that she next worked for four months after she began to receive Social Security benefits in 2012, which is permissible under the rules governing the trial work period. In addition, even if she continued working after the September 2010 accident, how much she earned when she did work was unclear and insufficient to show that she fraudulently received Social Security benefits in contravention of the trial work period regulations. Therefore, ACIC's inference of fraud from Anderson's continued receipt of Social Security benefits while working is not supported by conclusive evidence. In addition, Anderson's forthright responses in discovery and the placement of the question on the PIP benefits application in the middle of questions specific to the subject accident show that Anderson's interpretation of the limited scope of the question was a reasonable explanation for her no response to that question.

Finally, ACIC maintained that Anderson exaggerated the amount of attendant care she received because Hickson could not possibly have provided 16 hours of care each day.[1] ACIC argues that Hickson's testimony led to the conclusion that he only showed houses between 11 p.m. and 4 a.m., when Anderson was asleep. This conclusion, however, is not the only reasonable inference. Anderson moved in with Hickson one month after the accident, and he started working as a limousine driver over one year after the accident, at which time he switched from working full-time to part-time as a real estate agent, work he did largely from home. Hickson also testified that Anderson's sleep schedule was sporadic and she sometimes napped during the day. He also suggested that she sometimes stayed at home alone for brief periods of time. Hickson could have shown property when Anderson napped during the day or left Anderson home alone while he showed property. Therefore, Hickson's testimony did not leave 11 p.m. to 4 a.m. as the only window of time when he could have shown houses. Although there may be a factual question of how many hours of care Hickson provided and whether Anderson

---

[1] To the extent that Hickson stated that he cared for her "all day, every day," we note that he only requested reimbursement for 16 hours per day.

intended to submit a knowingly mistaken claim, the evidence was not so inconsistent as to warrant summary disposition based on fraudulent misrepresentation.

In sum, ACIC misinterpreted some evidence and exaggerated other evidence. Unlike other cases with surveillance video or other blatant evidence of fraud, ACIC identified inconsistencies that may or may not reflect fraud. Without the trial court's explanation of what evidence established fraud, we cannot affirm the trial court's grant of summary disposition.[2]

We reverse the trial court's grant of ACIC's motion for summary disposition and remand for the trial court to elucidate its reasons for granting summary disposition in favor of ACIC or to allow the case to proceed to trial. We also vacate the trial court's grant of ACIC's motion for attorney fees, which followed from the trial court's grant of summary disposition. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Peter D. O'Connell

---

[2] We do not address Anderson's alternative argument that the fraud exclusion did not apply to her. We note that Anderson states on appeal that she was driving a car owned by Sadell's, although the record does not establish this fact. If she was driving a car owned by Sadell's with their permission, she was an "insured" as defined in Sadell's insurance policy, and she was subject to the fraud exclusion in the policy. In that scenario, this case is distinguishable from *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 652-653; 899 NW2d 744 (2017), in which the Court first noted that the injured party was not an insured under the applicable policy.