# STATE OF MICHIGAN

# COURT OF APPEALS

KALVIN CANDLER,

        Plaintiff-Appellee,

and

PAIN CENTER USA, PLLC,

        Intervening Plaintiff,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellant.

FOR PUBLICATION
October 24, 2017
9:15 a.m.

No. 332998
Wayne Circuit Court
LC No. 15-011245-NF

Before: SAAD, P.J., and CAVANAGH and CAMERON, JJ.

SAAD, P.J.

In this action to recover personal injury protection (PIP) benefits, defendant appeals the trial court's denial of its motion for summary disposition.[1] In this case of first impression, we are asked to provide the proper interpretation of MCL 500.3173a(2), which imposes consequences for supplying false information "in support of a claim to the Michigan automobile insurance placement facility." Because plaintiff knowingly made false and material statements that were used to support a claim which was submitted to the Michigan automobile insurance placement facility (MAIPF), a fraudulent insurance act was committed, and plaintiff is precluded from recovering on his claim. Accordingly, we reverse the denial of defendant's motion for summary disposition.

## I. BASIC FACTS

---

[1] We granted leave to appeal in *Candler v Farm Bureau Mut Ins Co of Mich*, unpublished order of the Court of Appeals, entered September 22, 2016 (Docket No. 332998).

On September 12, 2014, plaintiff was struck by a hit-and-run driver. Because plaintiff was uninsured at the time of the accident, and because the driver of the other vehicle could not be identified, plaintiff made a claim for PIP benefits through the Michigan Assigned Claims Plan (MACP), which is maintained by the MAIPF.[2] The MAIPF assigned defendant to handle plaintiff's claims in accordance with the provisions of the Michigan no-fault act, MCL 500.3101 *et seq*.

While defendant paid over $150,000 in PIP benefits to plaintiff, it refused to pay other PIP benefits, including any for attendant or replacement-care services. Among the documentation submitted to defendant in support of a claim for PIP benefits were replacement-services calendars for the months of August, September, and October 2015. The calendars purportedly were signed by Andrew Candler, plaintiff's brother, and showed that Andrew provided care to plaintiff during these three months. However, during discovery, it was learned that Andrew last provided services to plaintiff in July 2015. After this time, plaintiff moved from Rochester to Detroit to live with his girlfriend, who took over providing replacement services for plaintiff. Plaintiff's counsel at the trial court conceded that plaintiff had signed his brother's name to these calendars.[3]

Plaintiff filed the instant suit to recover the owed PIP benefits. Defendant moved for summary disposition and argued that MCL 500.3173a(2) precluded plaintiff from recovering any PIP benefits because of the false statements that were provided. After accepting supplemental briefs from the parties, the trial court denied defendant's motion.

## II. STANDARDS OF REVIEW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), but because the resolution of the motion required consideration of evidence outside the pleadings, we will treat the motion as having been decided under MCR 2.116(C)(10). See *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 183-184; 551 NW2d 132 (1996). We review a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) de novo. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under this court rule "tests the factual sufficiency of the complaint." *Id.* at 120. "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, and admissions, and other evidence submitted by the parties in the light most

---

[2] Pursuant to MCL 500.3171(2), the MAIPF has the responsibility to "adopt and maintain an assigned claims plan." See also *W A Foote Mem Hosp v Mich Assigned Claims Plan*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 333360), slip op, p 4 n 5; *Bronson Health Care Group, Inc v Titan Ins Co*, 314 Mich App 577, 580 n 2; 887 NW2d 205 (2016).

[3] There was another calendar from February 2015, which ostensibly showed that Andrew provided more hours of service than he actually performed. But because defendant's position is that *any* false statement provided to it negates all of plaintiff's claims for PIP benefits, we will focus on the more blatant situation involving the forged signatures for the August, September, and October 2015 calendars.

-2-

favorable to the party opposing the motion." *Id.* (citation omitted). The motion is properly granted "if there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law." *Hazle v Ford Motor Co*, 464 Mich 456, 461; 628 NW2d 515 (2001).

Resolution of this issue also involves questions of statutory interpretation, which are questions of law that we review de novo. *Szpak v Inyang*, 290 Mich App 711, 713; 803 NW2d 904 (2010).

## III. ANALYSIS

Defendant argues that the trial court erred when it denied its motion for summary disposition because MCL 500.3173a(2) dictates a different result. We agree.

The goal in interpreting statutes is to give effect to the intent of the Legislature. *Titan Ins Co v Farmers Ins Exch*, 241 Mich App 258, 261; 615 NW2d 774 (2000). "In determining the intent of the Legislature, this Court must first look to the language of the statute." *Bush v Shabahang*, 484 Mich 156, 166-167; 772 NW2d 272 (2009). "If the language is clear and unambiguous, we assume the Legislature intended its plain meaning, and the statute is enforced as written." *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274, 279; 705 NW2d 136 (2005).

MCL 500.3173a provides as follows:

(1) The Michigan automobile insurance placement facility shall make an initial determination of a claimant's eligibility for benefits under the assigned claims plan and shall deny an obviously ineligible claim. The claimant shall be notified promptly in writing of the denial and the reasons for the denial.

(2) A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. *A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan.* [Emphasis added.]

Defendant asserts that the emphasized portion above means that, because of the forged signatures on the August, September, and October 2015 calendars and the corresponding false claims that Andrew performed services during those months, plaintiff is ineligible to receive any PIP benefits. Plaintiff argues that the first sentence of subsection (2) shows that this later-mentioned prohibition only applies when the false statement was made *to the MAIPF.* Consequently,

-3-

plaintiff asserts that because the false statements were presented to defendant and not MAIPF, then this statute does not act as a bar to the recovery of PIP benefits.[4]

We disagree with plaintiff's view. The first sentence of subsection (2) states, "A person who presents or causes to be presented an oral or written statement . . . as part of or *in support of a claim to the* [*MAIPF*] for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act . . . ." Thus, in order to qualify as part of a fraudulent insurance act under this subsection, the false statement merely must have been presented "as part of or in support of a claim to the [MAIPF] for payment or another benefit." Contrary to plaintiff's suggestion, the prepositional phrase "to the [MAIPF]" modifies the antecedent noun "claim," not "statement." Therefore, a person commits a fraudulent insurance act under this statute when he (1) presents or causes to be presented an oral or written statement, (2) which is part of or in support of a claim for no-fault benefits, (3) where the claim for benefits was submitted to the MAIPF.[5] Further, (4) the person

---

[4] Defendant also argues that because the statute uses the term "claim" and does not refer to any "application," it shows that plaintiff's view is not supported because only *applications* are submitted to the MAIPF. Defendant avers that if the Legislature had intended to cover situations where a claimant made false statements to the MAIPF in an application, then it would have used the term "application." Defendant refers us to MCL 500.4503, where the Legislature utilized both the terms "application" and "claims"; however, the word "application" in MCL 500.4503 is used in the context of an "application for the insurance of an insurance policy." MCL 500.4503(a), (b). An application for an insurance policy is not the same as a claim for benefits. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "claim" as "a demand for something due or believed to be due").

Thus, while there is a reason to use the terms "claim" and "application" in MCL 500.4503, there is no reason to use both terms in MCL 500.3173a because the request/application to the MAIPF is nevertheless a *claim* for owed benefits. The MACP Plan of Operations, § 5.1.A states that "[a] claim for personal protection insurance benefits under the Plan must be made on an application prescribed by the MAIPF." Hence, although the initial document to the MAIPF is called an application, it nevertheless is a claim for benefits, and the Legislature's failure to use the term "application" in MCL 500.3173a is neither surprising nor determinative.

[5] The dissent insists that we are reading more into the statute than what it says when we state that a claim must have been submitted to the MAIPF. But as we have discussed, the phrase "a claim to the MAIPF" makes it clear that the claim at issue must have been submitted to the MAIPF. The dissent seems to ignore the fact that plaintiff's "claim" for replacement-care services benefits is part of—and not separate from—the claim that he submitted to the MAIPF. See *post* at ___; slip op at 3 (stating that a request for particular benefits is a "new" claim, which is separate from the "prior" claim that was made to the MAIPF). The fact that the statute could have been drafted differently to achieve the same result is not a compelling reason to ignore the meaning of the, arguably, unartfully drafted language. Further, the fact that the Legislature ultimately did not pass the proposed modification to the statute, 2015 HB 4224 as passed by the Senate on June 9, 2016, could simply mean that it thought that any revision was not necessary

must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. Importantly, MCL 500.3173a(2) does not require that any particular recipient have received the false statement in order for the act to qualify as a fraudulent insurance act, as long as the statement was used "as part of or in support of a claim to the [MAIPF]."[6]

With this understanding, we hold that there is no genuine issue that a fraudulent insurance act, as defined by MCL 500.3173a(2), was committed when the August, September, and October 2015 calendars were submitted in support of a claim to the MAIPF for replacement services that were never provided. There is no dispute that plaintiff submitted a claim to the MAIPF to recover no-fault benefits after being injured in a motor vehicle accident. There also is no question that a false statement was presented to defendant in support of plaintiff's claim. While the MAIPF ultimately assigned the claim to defendant, the claim itself was nonetheless being processed through the MAIPF. Indeed, the MACP's Plan of Operations provides that servicing insurers, such as defendant, "act on behalf of the MAIPF." MACP Plan of Operations § 6.A.1. Therefore, plaintiff's claim for no-fault benefits is a claim to the MAIPF—not to defendant. Accordingly, the fact that plaintiff was dealing with defendant at the time the false statements were presented is not determinative.

Further, plaintiff knew that the statement contained false information, which concerned a fact or thing material to the claim. Here, the evidence shows that plaintiff knew that the calendars he submitted for the months of August, September, and October 2015 were not correct. Plaintiff's counsel conceded at the trial court that plaintiff signed/forged Andrew's name to the calendars. Further, during this three-month period, plaintiff knew that he moved to Detroit to be with his girlfriend, who then supplied the replacement services that Andrew previously supplied. No reasonable jury could conclude that plaintiff, despite the presence of any head injury, was not aware that he was submitting false information that was material to his claim for no-fault benefits. See *Quinto v Cross & Peters Co*, 451 Mich 358, 367; 547 NW2d 314 (1996) (stating that to create a genuine issue of material fact and defeat a motion for summary disposition under MCR 2.116(C)(10), there must be sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor).

---

because the existing language provided the same safeguards against the type of fraud the proposed revision attempted to address. Of course, we are cognizant that any attempt to glean legislative intent from legislative history, let alone a proposed amendment that never was enacted, is a difficult proposition at best. See, e.g., *In re Complaint of Mich Cable Telecom Ass'n*, 241 Mich App 344, 371-372; 615 NW2d 255 (2000); Scalia, *A Matter of Interpretation* (Princeton: Princeton University Press, 1997), pp 31-32.

[6] We note that this Court's opinion in *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), is not relevant for our case. While the Court in *Bahri* held that a claimant's fraudulent acts can bar the recovery of all PIP benefits, *id.* at 426, the ruling was predicated on the interpretation and application of an insurance policy contract, which contained a fraud exclusion, *id.* at 423-424. Here, *Bahri* does not govern because there is no policy to apply, let alone a fraud exclusion in a policy.

Additionally, the last sentence of MCL 500.3173a(2) provides that "[a] claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan." Because there is no genuine issue of material fact that plaintiff's claim for benefits was supported by a fraudulent insurance act, the claim is thereby ineligible for payment under the MACP.[7] As a result, the trial court erred when it ruled that defendant was not entitled to summary disposition.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Henry William Saad
/s/ Mark J. Cavanagh

---

[7] We decline to address the position that defendant advocated at the trial court that, in addition to plaintiff being ineligible to receive future PIP benefits, plaintiff must also reimburse defendant for any benefits it previously paid. On appeal, defendant does not present this argument. Indeed, in its brief on appeal, defendant asserts that it "is entitled to deny any further payment of PIP benefits to plaintiff."