*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRACEY NICKERSON, as Guardian for
REGINALD LEE MAPP,

        Plaintiff-Appellee,

v

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
August 26, 2021

No. 352768
Wayne Circuit Court
LC No. 17-008978-NI

TRACEY NICKERSON, as Guardian for
REGINALD LEE MAPP,

        Plaintiff-Appellant,

v

ALLSTATE INSURANCE COMPANY,

        Defendant-Appellee.

No. 354682
Wayne Circuit Court
LC No. 17-008978-NI

Before: RIORDAN, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 352768, defendant Allstate Insurance Company appeals as of right the trial court's judgment on the verdict awarding plaintiff Tracey Nickerson, as guardian for Reginald Lee Mapp, $247,728.06. In Docket No. 354682, plaintiff appeals as of right the trial court's order denying her post-trial motion for attorney fees.[1] We affirm.

---

[1] The order denied plaintiff interest and other miscellaneous costs as well, but only the attorney-fee aspect is at issue on appeal.

## I. FACTS AND PROCEEDINGS

In July 2008, Mapp was involved in a serious vehicle accident in which he suffered physical and neurological injuries. Because he was uninsured at the time, his claim for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, after the accident was assigned to defendant under MCL 500.3172. Plaintiff, his wife, is now his legal guardian.

The instant case concerns 24-hour attendant care allegedly provided to Mapp for a period of years by the following persons: From 8:00 p.m. to 8:00 a.m., Monday through Sunday, by plaintiff personally; from 8:00 a.m. to 8:00 p.m., Monday through Thursday, by plaintiff on behalf of HealthCall of Detroit, Inc.; and from 8:00 a.m. to 8:00 p.m., Friday through Sunday, by Stephanie Wallace on behalf of HealthCall. Defendant initially declined to pay PIP benefits for the attendant care but eventually settled with HealthCall with respect to the daytime attendant care. Plaintiff thus sued defendant for PIP benefits for the nighttime attendant care that she allegedly provided to Mapp.

Defendant placed Mapp under daytime surveillance on a total of 40 occasions in 2016 and 2017 to ascertain whether he required the 24-hour attendant care. According to defendant, the surveillance showed that Mapp only used a cane in three instances, each of which involved a visit to a doctor or an attorney; that Mapp was regularly able to walk normally, carry groceries, and perform yard work; and that Mapp often walked around the neighborhood or to a nearby liquor store unsupervised. The surveillance also indicated that Mapp was left home unsupervised by HealthCall on 29 occasions. Defendant identified several activities performed by Mapp that were inconsistent with a purported need for 24-hour attendant care, including lifting a small child, operating a weed whacker, and unloading groceries.

Defendant moved for summary disposition, arguing that plaintiff and HealthCall committed a "fraudulent insurance act" under MCL 500.3173a of the no-fault act. Specifically, defendant argued that the surveillance showed that Mapp did not require 24-hour attendant care because he was able to ambulate without assistance and perform other physical tasks, and further, that he was not actually provided with 24-hour attendant care because he was often left unsupervised at home or in the neighborhood.[2] The trial court denied the motion, reasoning that the daytime surveillance perhaps showed that *HealthCall* committed a "fraudulent insurance act" by not providing daytime attendant care, but that it did not show that plaintiff personally committed a "fraudulent insurance act," i.e., that plaintiff did not provide *nighttime* attendant care. The trial court added that the surveillance would be legally relevant to prove to a jury that the 24-hour attendant care was not "reasonably necessary" for the purposes of the no-fault act.[3]

---

[2] In addition, defendant observed that during an independent medical examination (IME) conducted by Dr. Seigerman, plaintiff represented that Mapp was unable to dress or cook, walk to the bathroom from the bedroom without a walker, and needed a cane or walker outside.

[3] Defendant sought leave to appeal the trial court's denial of its motion for summary disposition, and this Court denied leave "for failure to persuade the Court of the need for immediate appellate

The principal dispute at trial was whether Mapp needed 24-hour attendant care. The jury ultimately found, according to the verdict form, that "attendant care [was] reasonably necessary for Reginald Mapp's care, recovery, and rehabilitation during the claims period," and that "attendant care [was] actually provided by Tracey Nickerson to Reginald Mapp during the claims period." The jury awarded plaintiff $189,288 for attendant care, $5,279.05 for other allowable expenses, and $53,161.01 for no-fault penalty interest on overdue benefits.

At a December 6, 2019 hearing on plaintiff's motion for entry of judgment, the trial court explained that it was disinclined to enter judgment at that time because it had not yet received plaintiff's request for attorney fees, and it did not want to bifurcate the judgments:

> *The Court*: [Defense counsel] doesn't want to have to appeal this one and then when you file your next motion and I rule one way or another an [sic] attorney fees, one of you is appealing the attorney fee motion.
>
> I think it makes more sense for us to wrap this all into one nice document and one order, so when can you file the attorney fee motion?
>
> [*Plaintiff's Counsel*]: Well if I file it on Monday we won't be hurting for - -
>
> *The Court*: Why don't I adjourn this to January 10th and then you can get that one scheduled up for the same day, and then we can get one order entered that day.
>
> [*Plaintiff's Counsel*]: All right.
>
> *The Court*: Does that sound like a plan?
>
> [*Plaintiff's Counsel*]: Yes, ma'am.
>
> *The Court*: All right.
>
> [*Defense Counsel*]: Yeah, because the Judgment's going to control.

No hearing was held on January 10, 2020. The trial court held a hearing on January 31, 2020, during which it apparently decided to enter the judgment and wait for plaintiff to file a forthcoming motion for attorney fees. The trial court entered the judgment that day.

On March 27, 2020, plaintiff filed a motion for (1) taxable costs under MCR 2.625; (2) no-fault penalty interest under MCL 500.3142; (3) no-fault attorney fees under MCL 500.3148(1); (4) sanctions under MCR 2.313(C) for defendant's denials of her requests to admit; and (5) statutory

---

review." *Nickerson v Allstate Ins Co*, unpublished order of the Court of Appeals, entered February 6, 2019 (Docket No. 345509).

interest under MCL 600.6013. That motion was apparently unaccompanied by a brief or other explanation of its request for such costs, interest, and sanctions.

On June 5, 2020, plaintiff filed an amended motion for attorney fees, costs, and interest. The amended motion sought the same costs, interest, and sanctions that plaintiff sought in the March 2020 motion, and it was accompanied by a brief as well. The trial court denied plaintiff's motion without oral argument, stating that "[t]he motion was not timely filed in accordance with the court rules."

A couple of weeks later, plaintiff filed a motion for relief from that order. Plaintiff inferred from the order that the trial court denied her motion because it was filed outside the 28-day period set forth in MCR 2.625(F)(2) for taxing costs. Plaintiff acknowledged that her request for taxable costs was barred by that provision, but she explained that because MCL 500.3148(1) and MCR 2.313(C)(2) do not set forth a specific time limitation for requesting attorney fees, then it must only be made within a "reasonable time." And, plaintiff argued, her motion requesting attorney fees was filed within a "reasonable time." The trial court denied the motion, stating that "[a]ll of Plt's arguments were addressed in the original motion and denied."

This case is now before this Court.

## II. DOCKET NO. 352768

## A. SUMMARY DISPOSITION

Defendant argues that the trial court erred by denying its motion for summary disposition. We disagree. "This Court reviews de novo motions for summary disposition under MCR 2.116(C)(10)." *Johnson v USA Underwriters*, 328 Mich App 223, 233; 936 NW2d 834 (2019). "This Court, reviewing the record in the same manner as the trial court, must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Id*. (quotation marks and citation omitted).

MCL 500.3173a addresses fraud with respect to claims submitted to the Michigan automobile insurance placement facility (MAIPF). At the time relevant to this case, MCL 500.3173a(2) provided as follows:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under section 4503 that is subject to the penalties imposed under section 4511. A claim that contains or is supported by a fraudulent insurance act as described in this subsection

-4-

is ineligible for payment or benefits under the assigned claims plan. [See 2012 PA 204.][4]

In *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772; 910 NW2d 666 (2017), the plaintiff was injured by a vehicle and sought PIP benefits through a claim submitted to the MAIPF. *Id*. at 775. The defendant insurer was assigned the claim but refused to pay PIP benefits for replacement services. *Id*. at 776. This Court explained:

> Among the documentation submitted to defendant in support of a claim for PIP benefits were replacement-services calendars for the months of August, September, and October 2015. The calendars purportedly were signed by Andrew Candler, plaintiff's brother, and showed that Andrew provided care to plaintiff during these three months. However, during discovery, it was learned that Andrew last provided services to plaintiff in July 2015. After this time, plaintiff moved from Rochester to Detroit to live with his girlfriend, who took over providing replacement services for plaintiff. Plaintiff's counsel at the trial court conceded that plaintiff had signed his brother's name to these calendars. [*Id*.]

The defendant moved for summary disposition on the basis of fraud, arguing that the plaintiff's false statements precluded him from recovering any PIP benefits under MCL 500.3173a(2). *Id*. The trial court denied the motion, but this Court reversed. This Court first set forth the elements of a fraudulent insurance act under MCL 500.3173a(2):

> [A] person commits a fraudulent insurance act under this statute when (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Id*. at 779-780 (footnote omitted).][5]

Then, this Court held that the plaintiff was barred from recovering PIP benefits under that statute, reasoning that he sought PIP benefits for three months for replacement services that were never provided. *Id*. at 781-782.

In this case, according to defendant, whenever any person makes a fraudulent statement in connection with a claim submitted to the MAIPF, a "fraudulent insurance act" under MCL 500.3173a(2) has been committed, and as a result, *the entire claim submitted to the MAIPF* is effectively void. Thus, defendant argues, it was entitled to summary disposition under MCL 500.3173a(2) as interpreted by *Candler* because both HealthCall and plaintiff made fraudulent statements concerning attendant care. Plaintiff, on the other hand, implicitly interprets MCL

---

[4] In June 2019, MCL 500.3173a was amended by 2019 PA 21. The pertinent subsection is now subsection (4).

[5] This Court also rejected the plaintiff's argument that MCL 500.3173a(2) only applied to statements directly attaching to a claim submitted to the MAIPF. *Id*. at 779.

500.3173a(2) as providing that whenever any person makes a fraudulent statement in connection with a claim submitted to the MAIPF, *that particular person's claim* for PIP benefits is effectively void. Thus, plaintiff argues, even if HealthCall made fraudulent statements and was not entitled to claim PIP benefits under MCL 500.3173a(2), that would not effectively void her personal claim for PIP benefits.

We acknowledge that defendant's interpretation of MCL 500.3173a is a reasonable reading of the statute. MCL 500.3173a(2) essentially provided that whenever "[a] person" makes a knowingly false statement "as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit," a "fraudulent insurance act" has been committed, and further, such a "claim" to the MAIPF is ineligible for PIP benefits under the assigned claims plan. Thus, the word "claim" in MCL 500.3173a(2) refers not to a particular person's claim for PIP benefits, but instead to the underlying "claim" submitted to the MAIPF. In other words, under this reading of the statute, a single "fraudulent insurance act" can effectively void an entire claim submitted to the MAIPF.[6]

We need not decide whether defendant's interpretation of MCL 500.3173a(2) is correct. Even if we accepted that interpretation and concluded that fraudulent statements by plaintiff *or* HealthCall would effectively void plaintiff's personal claim for PIP benefits, the trial court was still correct in denying defendant's motion for summary disposition. The first three elements of *Candler* were unquestionably satisfied when plaintiff and HealthCall submitted billing statements for attendant-care reimbursement to defendant. With regard to the fourth element, however, defendant failed to show in its motion and accompanying brief for summary disposition that plaintiff or HealthCall "must have known that the statement[s] contained false information." *Candler*, 321 Mich App at 780. In this regard, it is important to note precisely what "statements" were included with the motion for summary disposition.[7] Defendant did not include *all* attendant-care billing statements from HealthCall and plaintiff for the period in question. Rather, defendant simply included the following billing statements: (1) from plaintiff personally, billings for the entire month of August 2016 and the entire month of January 2018; (2) from plaintiff on behalf of HealthCall, billings for August 1 to August 4, 2016, and for November 27 to November 30, 2017; and (3) from Wallace, billings for August 5 to August 7, 2016, and for November 24 to November 26, 2017. Because defendant only conducted daytime surveillance, any fraudulent statements must

---

[6] MCL 500.3173a(2) was added to the no-fault act in 2012. See 2012 PA 204. In this case, it appears that the underlying claim for PIP benefits was submitted to the MAIPF before 2012. Nonetheless, "a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute." *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 39; 852 NW2d 78 (2014). Such is the case here.

[7] See MCR 2.116(G)(5) ("The affidavits, together with the pleadings, depositions, admissions, and documentary evidence *then filed in the action or submitted by the parties*, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10).") (emphasis added).

arise from the billing statements of HealthCall.[8]  Thus, for defendant to be entitled to summary disposition, it must have shown that HealthCall submitted fraudulent billings for the first week of August 2016 or the last week of November 2017.  In other words, for example, because defendant failed to include the HealthCall billing statement for the first week of June 2017, the fact that Mapp was recorded walking unsupervised to a nearby liquor store on June 3, 2017, is irrelevant.

Defendant's limited documentary submission is fatal to its appeal.  The vast majority of the surveillance was conducted outside the first week of August 2016 or the last week of November 2017.  For example, of the 11 instances on which Mapp was recorded walking unsupervised around the neighborhood, not a single instance occurred during the first week of August 2016 or the last week of November 2017.  In the end, when the surveillance is limited to the first week of August 2016 and the last week of November 2017, defendant is only able to show that on one instance on August 6, 2016, Mapp was "standing/walking outside of house without supervision" and that on another instance that same day, he was "left home alone without supervision." This is the limited evidence of fraudulent billing statements submitted by HealthCall.

In our view, such limited evidence is insufficient to show that HealthCall submitted knowingly false billing statements to defendant for the purposes of the fourth element of MCL 500.3173a.  See *Candler*, 321 Mich App at 780.  While the term "attendant care" suggests nonstop supervision, that is not practical.  It cannot be realistically disputed that, for example, a healthcare worker may briefly leave a patient unattended to use the bathroom or make a phone call.  Thus, the fact that Mapp was observed on one instance "standing/walking outside of house without supervision" does not mean that a HealthCall employee was not in the immediate vicinity or otherwise unavailable.  Accordingly, that HealthCall billed defendant for attendant care during that time does not show that it submitted knowingly false information.

At most, the fact that HealthCall left Mapp "home alone without supervision" on another single instance would perhaps suffice to satisfy the fourth element.  However, that single instance, in our view, would not satisfy the fifth element, "the statement concerned a fact or thing material to the claim."  See *Candler*, 321 Mich App at 780.  This case concerned years of attendant care, and a single daytime instance of false billing on August 6, 2016, is not "material" to the underlying claim for PIP benefits under the assigned claims plan.  In contrast, *Bahri v IDS Property Cas Ins Co*, 308 Mich App 420; 864 NW2d 609 (2014), another case involving alleged insurance fraud, concerned 19 days of unprovided replacement services, see *id.* at 425, and *Candler* concerned three months of unprovided replacement services, see *Candler*, 321 Mich App at 776.  Accordingly, we conclude that while HealthCall perhaps submitted a knowingly false billing statement to defendant with regard to the services allegedly provided on August 6, 2016, that knowingly false billing statement was not "material to the claim" for the purposes of MCL 500.3173a.

---

[8] As the trial court correctly observed, the daytime surveillance would only show that HealthCall did not provide the daytime attendant care.  It would not show that plaintiff did not provide the nighttime attendant care.

To summarize, the trial court did not err by denying defendant's motion for summary disposition. Even if it erred in its interpretation of MCL 500.3173a, defendant was nonetheless not entitled to summary disposition because its surveillance did not sufficiently contradict the limited billing statements that it included with the motion for summary disposition.[9]

## B. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that the jury verdict for attendant care and no-fault penalty interest was against the great weight of the evidence. This issue is waived. To preserve an issue concerning the great weight of the evidence, a party must move the trial court for a new trial. See *Hyde v Univ of Mich Bd of Regents*, 226 Mich App 511, 525; 575 NW2d 36 (1997). Defendant failed to do so here, so this issue is not preserved for review.

Our Supreme Court has explained that when a party fails to move the trial court for judgment notwithstanding the verdict because the evidence was insufficient to sustain the verdict, the issue is waived and cannot be reviewed by this Court "[a]bsent compelling circumstances requiring action to avoid a miscarriage of justice." *Napier v Jacobs*, 429 Mich 222, 235; 414 NW2d 862 (1987) (quotation marks and citation omitted). Our Supreme Court also explained that "the loss of a favorable jury verdict," by itself, is not such a miscarriage of justice. See *id*. at 233. We conclude that *Napier* applies here, where defendant has maintained an argument on appeal that the verdict was against the great weight of the evidence but did not file the corresponding motion in the trial court, and where defendant cannot identify prejudice beyond mere monetary loss. Thus, this issue is waived, and we decline to review it.

## C. DEPOSITION

Defendant argues that the trial court erred by refusing to rule on objections raised during the *de benne esse* deposition of Dr. Barkley and instead showing the entire deposition to the jury. According to defendant, on the second day of trial, the trial court stated on the record that it would show the entire deposition to the jury and would not rule on objections that defendant raised during the deposition. Defendant asserts that it objected to this procedure on the record. From our review of the transcript of that day, however, we cannot identify such an objection or statement from the trial court that it would refuse to rule on any objections raised in Dr. Barkley's deposition.[10] Given

---

[9] Defendant also argues that summary disposition was warranted because, contrary to the surveillance, plaintiff told a case manager during an IME of Mapp that he "was not able to dress, does not cook, needs a walker to go from the bed to the restroom, has to have help with pants, showering," and "uses a walker or a cane outside." The IME report was attached as an exhibit to its motion for summary disposition and argued in the accompanying brief. The surveillance, however, only contradicted the assertion than Mapp "uses a walker or cane outside," and even that was not clearly contradicted because Mapp was recorded using a cane on three occasions. We decline to conclude that such a relatively insignificant statement warrants dismissal of the case.

[10] In its reply brief, defendant asserts that the trial court ruled in the presence of the jury that "it is all coming in" with respect to Dr. Barkley's deposition. Further, during oral argument before this Court, defendant indicated that this ruling could be found on page 228 of the transcript of the first

the lack of clarity in the record, we lack a basis to reverse. See *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 737; 832 NW2d 401(2013) ("The purpose of the appellate preservation requirements is to induce litigants to do what they can in the trial court to prevent error and eliminate its prejudice, or to create a record of the error and its prejudice.") (quotation marks and alteration omitted).

### III. DOCKET NO. 354682

In her appeal, plaintiff argues that the trial court erred by denying her post-judgment motion for attorney fees under MCL 500.3148(1) and MCR 2.313(C)(2) because it was timely filed.[11] We disagree. A trial court's decision to deny a motion for attorney fees is reviewed for an abuse of discretion. See *Colen v Colen*, 331 Mich App 295, 304; 952 NW2d 558 (2020).

At the time relevant to this case, MCL 500.3148(1) provided as follows:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

MCR 2.313(C)(2) provides as follows:

> (2) *Failure to Admit*. If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that
>
> (a) the request was held objectionable pursuant to MCR 2.312,
>
> (b) the admission sought was of no substantial importance,

---

day of trial. We cannot locate such a ruling on page 228 or elsewhere but note that the trial court stated outside the presence of the jury at the end of the second day of trial that "it's going all in" with respect to the *de benne esse* deposition of another witness that defendant would be presenting the following day.

[11] As noted previously, plaintiff's motion in the trial court, in addition to seeking attorney fees under MCL 500.3148(1) and MCR 2.313(C)(2), also sought taxable costs under MCR 2.625, no-fault penalty interest under MCL 500.3142, and statutory interest under MCL 600.6013. Plaintiff does not argue on appeal that the trial court erred by categorically refusing to award such costs and interest. Thus, we treat plaintiff's appeal as essentially concerning a motion for attorney fees.

(c) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or

(d) there was other good reason for the failure to admit.

Neither of these two provisions set forth a time period for filing a motion for attorney fees. In analogous cases, this Court has explained that when a statute or court rule does not set forth a specific time period, the motion must be filed within a "reasonable time." For example, a motion for sanctions under MCL 600.2591 must be filed "within a reasonable time after the prevailing party was determined." *Avery v Demetropoulous*, 209 Mich App 500, 503; 531 NW2d 720 (1994). Similarly, in *Colen*, this Court explained that a motion for attorney fees under MCR 3.206(D)[12] must be filed "within a reasonable time after the fees sought were incurred":

> Accordingly, we conclude that a motion for attorney fees under MCR 3.206(D) must be brought within a reasonable time after the fees sought were incurred and that what constitutes a reasonable time depends on the particular facts and circumstances of each case. A trial court's decision to deny a request for attorney fees on the ground that the motion was untimely because it was not made within a reasonable time is within the court's inherent authority to impose sanctions appropriate to contain and prevent abuses so as to ensure the orderly operation of justice, as well as its inherent authority to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. An exercise of the court's inherent power may be disturbed only upon a finding that there has been a clear abuse of discretion. [*Colen*, 331 Mich App at 304 (cleaned up).]

Here, the trial court denied plaintiff's motion for attorney fees because "[t]he motion was not timely filed in accordance with the court rules." However, as plaintiff correctly noted in her motion for relief from that order, the proper standard for the filing of a motion for attorney fees is "reasonable time," when the relevant statute or court rule does not set forth a specific time limitation. And, as plaintiff also noted, neither MCL 500.3148(1) nor MCR 2.313(C)(2) set forth a specific time limitation. Further, we cannot identify any other court rule that would justify the trial court's order. For example, MCR 2.625(F)(2) provides for a 28-day limitation for taxing costs post-judgment, but that court rule does not concern motions for attorney fees. Therefore, the trial court erred to the extent that its order indicates that plaintiff failed to comply with a particular court rule. Similarly, the trial court erred when it denied plaintiff's motion for relief on the basis that "[a]ll of plt's arguments were addressed in the original motion and denied."[13]

Nonetheless, this Court will not reverse a correct result reached for the wrong reason. See *Varela v Spanski*, 329 Mich App 58, 81; 941 NW2d 60 (2019). Here, plaintiff failed to file her motion for attorney fees within a "reasonable time," given "the particular facts and circumstances

---

[12] MCR 3.206(D)(1) provides that in domestic-relations actions, "[a] party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding."

[13] The reference to "original motion" was presumably intended to refer to "original order."

of [the] case." *Colen*, 331 Mich App at 304. At the December 6, 2019 hearing on plaintiff's motion for entry of judgment, the trial court specifically declined to enter the judgment at that time because it wanted to wait for plaintiff to file a motion for attorney fees. Plaintiff agreed to the delay and indicated that a motion would be filed within days. For reasons that are unclear, the trial court ultimately entered the judgment on January 31, 2020, without plaintiff having filed the motion. And plaintiff did not file the motion at issue until June 5, 2020.

On these facts, plaintiff unreasonably delayed filing her motion for attorney fees. Plaintiff inaccurately informed the trial court during the December 2019 hearing that the motion would be filed shortly. The trial court thus delayed entering the judgment for that reason—if plaintiff had not inaccurately stated that she would be filing her motion shortly, then the trial court could have entered the judgment that day or shortly thereafter. Consequently, plaintiff's statement delayed entry of judgment in this case by nearly two months. And even then, plaintiff did not file the motion until early June 2020. Therefore, her motion was filed nearly seven months after the jury verdict. The only explanation offered for the delay by plaintiff in the trial court was the following sentence in her brief in support of her motion for relief: "In this case the highly unusual circumstances surrounding the Covid-19 pandemic and the state of emergency contributed to the date of Plaintiff's filing as well." This explanation, however, does not explain the delay from December 2019 to about March 2020, even if it sufficiently explained the delay from about March 2020 to June 2020.

Plaintiff argues that her motion for attorney fees was filed within a "reasonable time" because this Court has held that a *post-appeal* motion for attorney fees was timely filed. See, e.g., *Giannetti Bros Constr Co, Inc v Pontiac*, 152 Mich App 648, 657; 394 NW2d 59 (1986) ("[A] motion [for costs and attorney fees] should be brought within a reasonable time after the prevailing party has been determined. Under the circumstances, 55 days after this Court's resolution of the appeal is not an excessively long time, given the complexity of the trial and the sums of money involved."). Thus, plaintiff argues, if she could have filed her motion *after* this appeal was resolved, it logically follows that her motion was timely filed *before* this appeal was resolved.

This argument misses the mark for two reasons. First, it disregards the nearly two-month delay between December 2019 and January 2020 in entering the judgment that was attributable to the trial court wanting to include any possible award of attorney fees in that judgment. Second, the implicit rationale of *Giannetti* and other such cases is that a party should be entitled to wait for the ultimate prevailing party to be determined before a motion for attorney fees is filed—perhaps, for example, to add appellate attorney fees to the final award. No such justification is present here, given that plaintiff filed her motion well before the instant appeal could be decided. In other words, there is no apparent justification for plaintiff arbitrarily filing her motion in early June 2020, as opposed to shortly after trial *or* after this Court decided the appeal.

Accordingly, we conclude that plaintiff did not file her motion for attorney fees within a "reasonable time," and the trial court is affirmed on this alternate basis.

## IV. CONCLUSION

There were no errors warranting relief.  Consequently, we affirm.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Brock A. Swartzle