*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAMAYA SHAWNTAL ALLEN,

UNPUBLISHED
January 13, 2026
1:54 PM

Plaintiff-Appellant,

v

No. 374174
Macomb Circuit Court

USA UNDERWRITERS,

LC No. 2024-001242-NF

Defendant-Appellee.

Before: BOONSTRA, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

In this first-party no-fault action, plaintiff appeals as of right the trial court's opinion and order granting summary disposition in favor of defendant under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

On January 9, 2024, plaintiff applied for an automobile insurance policy with defendant. The application asked plaintiff to list all members of her household who were age 14 or older, and plaintiff listed only herself.[1] The application also asked, "In the past three (3) years have you or any rated household member had your driver's license suspended or revoked?" Plaintiff answered "no." In the declarations section of the application, plaintiff affirmed through her signature "that the statements on all pages of this application are true," and she "request[ed] [defendant] to issue the insurance applied for in reliance on these statements." Defendant issued plaintiff a six-month policy on the same day she applied for insurance.

On January 18, 2024, plaintiff sustained injuries in a motor-vehicle collision. On February 2, 2024, plaintiff filed a claim with defendant for no-fault benefits. During its ensuing

---

[1] The application also stated, "It is unacceptable to not list all members of your household who are age 14 or older as they may cause a premium increase or a declination of coverage. The listing of all members of your household age 14 or older is a condition precedent to binding coverage."

investigation, defendant discovered from plaintiff's certified driving record that her driver's license was suspended from March 27, 2019 until June 3, 2021, at which time she paid a reinstatement fee. Defendant informed plaintiff that, based on her representation to the contrary, it would be rescinding and voiding her policy as of its inception date, and denying all claims relating to her January 18, 2024 collision.[2]

On March 26, 2024, plaintiff filed a complaint in the trial court, asserting a claim for first-party no-fault benefits. During her deposition, plaintiff testified that she was living with her fiancé, Terrance Campbell, when she applied for no-fault coverage. Mr. Campbell's driving record indicated that his license had been suspended within three years before plaintiff applied for coverage.

On November 12, 2024, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff procured her policy through fraud by making material misrepresentations in her application for insurance that she intended defendant to rely on—and that defendant did in fact rely on—to issue plaintiff a policy. This in turn, defendants contended, warranted rescission of the policy. In support of its motion, defendant provided an affidavit from one of its underwriters, in which the underwriter averred that defendant would not have issued plaintiff her policy if she had answered "yes" to the application question about license suspension or if she had answered "no" to the question about whether she had listed all household members age 14 or older.

On December 9, 2024, the trial court heard argument on defendant's motion and took the matter under advisement. On January 3, 2025, the trial court released an opinion and order in which it granted defendant's motion for summary disposition. The trial court concluded that, based on the record evidence, there was no genuine issue of material fact that plaintiff knowingly or recklessly made material misrepresentations on her insurance application; that plaintiff intended for defendant to rely on these misrepresentations; that defendant relied upon these misrepresentations when it issued the policy; and that defendant suffered injury from this reliance because the actual risk of providing plaintiff an insurance policy had not been fully contemplated. The trial court accordingly found that defendant established that plaintiff procured her policy through fraud, which entitled defendant to rescind the policy.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Reese v James*, 348 Mich App 454, 459; 19 NW3d 386 (2023). Defendant sought summary disposition under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "When reviewing a motion under this subrule, we must consider the

_____

[2] Defendant also advised plaintiff that its rescission letter was based on the investigation conducted "to date," and it expressly reserved other rights and defenses under the policy.

pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Life Skills Village, PLLC v Nationwide Mut Fire Ins Co*, 331 Mich App 280, 286 n 3; 951 NW2d 724 (2019) (quotation marks and citation omitted).

## III. FRAUDULENT MISREPRESENTATION

Plaintiff first argues that there was insufficient evidence for the trial court to conclude, as a matter of law, that she procured the at-issue policy through fraud. We disagree.

To establish fraud in the procurement of an insurance policy, the insurer must establish that (1) the insured made a material misrepresentation when applying for insurance; (2) the misrepresentation was false; (3) when the insured made the misrepresentation, he or she either knew it was false or made it recklessly, without any knowledge of its truth; (4) the insured made the misrepresentation intending that the insurer rely on it; (5) the insurer acted in reliance on the misrepresentation; and (6) the insurer suffered injury. See *Titan Ins Co v Hyten*, 491 Mich 547, 571-572; 817 NW2d 562 (2012).

Plaintiff on appeal does not challenge the trial court's conclusion that there was no genuine issue of material fact that plaintiff made a false statement in her application for insurance (the second prong) and that defendant suffered injury (the sixth prong). Plaintiff challenges all of the remaining prongs to varying degrees.

For the first prong, plaintiff contends that she did not make a *material* misrepresentation to defendant because defendant never paid her any benefits on the basis of her misrepresentations. This argument misunderstands the first prong—an insurer does not have to pay fraudulently-obtained no-fault benefits before rescinding a policy that was procured by fraud, and whether an insurer actually paid fraudulently-obtained benefits is not the test for whether a misrepresentation was material. A misrepresentation in an application for insurance is material if the insurer either would have charged a higher premium or would not have issued the policy had the insured provided accurate information to the insurer. See *Oade v Jackson Nat Life Ins Co of Michigan*, 465 Mich 244, 253-254; 632 NW2d 126 (2001). Defendant provided an affidavit from one of its underwriters in which the underwriter averred that defendant would not have issued plaintiff the policy if plaintiff had provided defendant with accurate information in her application for insurance. This evidence plainly established that plaintiff's misrepresentations in her application were material, and plaintiff did not present any evidence bringing this fact into question.

With respect to the third prong, plaintiff insists that she did not *knowingly* make false statements in her application for insurance because she did not know her license was previously suspended, and she misunderstood the question about other household members. In support of this argument, defendant relies on MCL 500.3173a and this Court's discussion of that statute in *Candler v Farm Bureau Mut Ins Co of Michigan*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017). But that statute and case deal with claims made through the Michigan automobile insurance placement facility, which is not the type of claim at issue here. This case deals with fraud perpetrated by an insured on a private insurer, so it is governed by the principles of common-law fraud in the procurement. And that type of fraud does not have a strict knowledge requirement; rather, as *Titan Ins Co* explained, the knowledge requirement of common-law fraud in the

procurement is satisfied if the insured *either* made the misrepresentation knowing that it was false *or* made the misrepresentation "recklessly, without any knowledge of its truth." *Titan Ins Co*, 491 Mich at 572.

Plaintiff does not contest that she, at the very least, made the misrepresentations in her application for insurance recklessly and without any knowledge of their truth. And we agree with the trial court that there is no genuine issue of material fact that she did. Plaintiff's application asked her to list all members of her household over the age of 14, and she listed only herself, but later testified that she was living with her fiancé at the time she submitted her application. The question in the application was unambiguous, and plaintiff's insistence that she misunderstood the question merely supports that she did not carefully read the question but instead answered it "recklessly, without any knowledge of [her answer's] truth." *Id*. Plaintiff's application also asked her if her license had been suspended within the past three years, to which she answered "no." But plaintiff's license was indeed suspended during the preceding three years, and she paid to have her license reinstated a little over two years before applying for insurance. Plaintiff maintains on appeal that she had no knowledge that her license was suspended, but even if that is true, "the law requires [a driver] to know [their] driving status," *Ahmed v Tokio Marine American Ins Co*, 337 Mich App 1, 26; 972 NW2d 860 (2021), so, again, plaintiff's insistence that she did not know that her license was suspended when it unequivocally was suggests that plaintiff answered the question "recklessly, without any knowledge of [her answer's] truth." *Titan Ins Co*, 491 Mich at 572.[3]

Turning to the fourth prong, plaintiff contends that there is a genuine issue of material fact as to her intent because "no evidence was presented regarding the insured's intention to misrepresent any fact." This argument misunderstands the fourth prong, which asks whether the insured made the misrepresentation intending for the insurer to rely on it. See *id*. And there can be no serious dispute that plaintiff made the misrepresentations in her application for insurance intending for defendant to rely on them. Indeed, plaintiff signed a declaration in her application for insurance declaring that she intended for defendant to rely on the information in her application to issue her a policy. That aside, the obvious reason that plaintiff answered the questions in her application for insurance and submitted that application to defendant was so that defendant would issue plaintiff an insurance policy. This all supports the trial court's conclusion that there was no genuine issue of material fact that plaintiff made the representations in her application for insurance intending for defendant to rely on them, and plaintiff has not come forth with any evidence bringing this fact into dispute.

---

[3] We do note an arguable ambiguity in the language of the policy application. The application asks, "In the past three (3) years, have you or any rated household member had your driver's license suspended or revoked?" This could be interpreted as asking either (1) whether a suspension or revocation of a license *occurred* within that three-year period; or (2) whether at any time during that three-year period the suspension or revocation of a license was *in effect*. The parties, however, both appear to interpret the language as meaning the latter, and plaintiff does not argue on appeal (and did not argue in the trial court) otherwise. Regardless, plaintiff's misrepresentation regarding the members of her household was a sufficient basis for finding that plaintiff had procured the policy through fraud.

Plaintiff's argument related to the fifth prong is similar to the argument she makes with respect to the third prong—plaintiff contends that there is no evidence that defendant relied on plaintiff's representations because it never paid plaintiff any benefits. As explained above, however, there is no requirement that an insurer pay fraudulently-obtained no-fault benefits before attempting to rescind a policy on grounds that it was procured through fraud. That aside, defendant clearly relied on the representations that plaintiff made in her application for insurance—including the misrepresentations—when it issued plaintiff the policy. Defendant's underwriter averred as much in her affidavit, and plaintiff never presented any evidence bringing this fact into question.

Accordingly, on this record, the trial court properly concluded that there was no genuine issue of material fact that plaintiff made material misrepresentations in her application for insurance; those misrepresentations were false; plaintiff made the misrepresentations recklessly, without any knowledge of their truth; plaintiff made the misrepresentations intending for defendant to rely on them to issue her an insurance policy; defendant relied on plaintiff's misrepresentations to issue plaintiff a policy; and defendant suffered injury as a result of this reliance. In other words, the trial court properly concluded that there is no genuine issue of material fact that plaintiff procured her insurance policy with defendant through fraud. See *Titan Ins Co*, 491 Mich at 571-572.

## IV. BALANCING OF EQUITIES

Plaintiff next argues that the trial court erred by granting defendant's request to rescind plaintiff's policy without first balancing the equities. We disagree.

In *Webb v Progressive Marathon Ins Co*, 335 Mich App 503, 510; 967 NW2d 841 (2021), this Court clearly held that an insurer "is entitled to rescind its policy as it pertained to [the insured] in its entirety" if the insurer establishes that the insured procured the policy through fraud. The *Webb* Court later in its opinion reiterated that, if a party is not an innocent third party, then "the trial court need not engage in any balancing of the equities"; rather, in that circumstance, the insurer would simply "be entitled to rescind coverage." *Id*. at 512-513.

The trial court here therefore did not err when it did not balance the equities after concluding that plaintiff procured the at-issue policy through fraud.

Affirmed.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young

-5-