*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FACTORY MUTUAL INSURANCE COMPANY,
doing business as FM GLOBAL INSURANCE
COMPANY, and OAKLAND UNIVERSITY,

UNPUBLISHED
May 26, 2022

Plaintiffs-Appellants,

v

No. 357084
Oakland Circuit Court
LC No. 2020-178895-CB

THE CHRISTMAN COMPANY,

Defendant/Cross-Plaintiff,

and

SITE DEVELOPMENT, INC.,

Defendant/Cross-Defendant-Appellee.

Before: BORRELLO, P.J., and SHAPIRO and HOOD, JJ.

PER CURIAM.

Plaintiff, Factory Mutual Insurance Company, doing business as FM Global Insurance Company, appeals as of right the order granting summary disposition to defendant/cross-defendant, Site Development, Inc., (hereinafter "defendant"). On appeal, plaintiff argues the trial court erred when it concluded, despite conflicting evidence, no genuine issues of material fact existed regarding whether defendant breached its contractual duties.[1] For the reasons set forth in

---

[1] Plaintiff additionally argues that the trial court erred by refusing to give proper weight to plaintiff's experts' testimonies and by considering the inadmissible testimonies of defendant/cross-plaintiff's, Christman's employees, Jeffry Tomczak and Jeffrey White. However, because these issues were not properly preserved for appeal and given our conclusion that the trial court erred when granting summary disposition in this case, we need not address these issues. Additionally,

this opinion, we reverse the trial court's granting of summary disposition in favor of defendant and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. RELEVANT BACKGROUND

This case arises out of water damage to the Oakland Center (the building) on Oakland University's campus. Oakland University contracted to have The Christman Company (Christman) serve as the Construction Manager of Oakland University's expansion project. Christman subcontracted with defendant to perform the excavation and demolition for the project. The relevant portions of Christman's obligations were:

> (i) The Construction Manager shall be responsible for review and coordination of the work of its employees and all Subcontractors to insure full compliance with all laws, regulations, ordinances, and governmental mandates relating to safety, including but not limited to, all such laws, regulations, ordinances, and governmental mandates pertaining to fire protection, blasting, and excavation. The Construction Manager shall continuously inspect all operations, Work, materials, and equipment and shall be solely responsible for the discovery, determination, correction, and prevention of any and all conditions, which constitute a risk of bodily injury or property damage;
>
> * * *
>
> (k) The Construction Manager shall perform all duties efficiently and with the requisite expertise, skill, quality and competence to satisfy the requirements of the Contract Documents. The Construction Manager shall, at all times, exercise complete and exclusive control over the means, methods, sequences and techniques of construction and the Work.

The attachment to the contract defines "Work" as:

> The term "Work" means the construction and services required by the Contract Documents and includes all other labor, materials, equipment, licenses, permits, insurance and services provided or to be provided by the Construction Manager to fulfill the Construction Manager's obligations. The Work may constitute the whole or a part of the Project.

The supplement to the subcontract lists defendant's obligations regarding dewatering:

> 24. Provide all dewatering (ground and rain water) including but not limited to areas of excavation and structural concrete. Keep areas de-watered as necessary

as will be detailed below, defendant's argument the contract constitutes a satisfaction contract was not raised to the trial court, and therefore was not preserved for appellate review.

until final grading is complete and storm utilities are made operational. All ground water will be diverted so as not to interfere with construction or public traffic flow and the operations of existing facility. All drainage inlets shall be protected as specified. Maintenance of dewatering system to be considered a 24 hour/7 day week assignment.

Regarding defendant's responsibilities, the subcontract states:

[A.]1. Subcontractor shall be solely responsible for the layout of its Work. Subcontractor shall be solely responsible for the accuracy and workmanship of its Work and shall be solely responsible to others for its failure to perform in accordance with the Contract Documents.

* * *

[B.]1. For all purposes herein, the Subcontractor shall be deemed to be an independent contractor fully responsible for the means, methods and safety measures and procedures utilized fulfilling the scope of services or terms of this Agreement . . . .

The subcontract's only listed specification for dewatering concerns dewatering for groundwater:

1. Provide all equipment, tools, materials, electrical power, and labor required for dewatering operations as required to lower and control groundwater levels during construction and to dispose of the pumped water.

In August 2017, Oakland University was inundated by a storm. The storm was classified as a 50-to-100-year storm. The excavation pit (the pit) dug by defendant, located next to the building, was flooded with water, which leaked into the building and caused significant damage. Oakland University submitted a claim to plaintiff, who paid $460,839 to Oakland University for the damages. Shortly after payment of the claim plaintiff filed suit, as Oakland University's subrogee, against Christman and defendant, asserting negligence and breach-of-contract claims. Christman was dismissed from the case. Plaintiff's argument on appeal concerns its breach-of-contract claim against defendant, in which plaintiff alleged defendant failed to use adequate preventative measures and proper equipment to protect the building from rainwater buildup.

In their complaint, plaintiff asserted defendant failed to prevent the accumulation of rainwater in the pit, which resulted in water damage to the building. Defendant denied having a duty to protect the building from water damage. During the storm, David White, defendant's foreman, who placed the pumps in the pit initially, immediately returned to Oakland University to help pump out the water. Defendant installed two, two-inch electric pumps, which became clogged with mud, buried in the flood, and destroyed.

Kirk Wolf, a civil engineer retained as an expert by plaintiff, issued a water intrusion evaluation, in which he opined defendant's dewatering and protection of the exposed opening of the pit were insufficient to prevent the water damage from the storm. Wolf concluded the damage would not have occurred if defendant used adequate dewatering procedures.

Paul Gross, a meteorologist retained as an expert by plaintiff, submitted a report, in which he asserted the storm was "not only anticipated, but also strongly communicated by the National Weather Service (NWS)[.]" Gross noted storms were in the weather forecast at least 24 hours before the storm occurred, and the NWS's communications "escalated steadily," with the first communication occurring 12 hours before the storm. The NWS's forecasts were easily accessible, and anyone with a smartphone could receive constant weather updates on their cellphones.

David White, the Site Supervisor for the project, was on-site every day and handled the grading and excavation of the project. David White placed the pumps with float systems in the pit, situated on top of buckets, and filled the pit with stones to protect the pit from a normal rainstorm. Hoses ran from the pumps in the pit to catch basins nearby. Every night David White, Jeffrey White, or one of their workers would evaluate the pit and ensure the pumps were working properly. Every morning David White would meet with Christman's workers and look up the weather for the day to prepare for it. David White referred to the storm as an act of God. Everything around the pit was graded and sloped away from the building to the catch basins. David White had no opinion on who was at fault for the water damage. The pumps were low in the pit, and the sloping was outside, away from the pit.

Kevin Lampton, Director of Operations for defendant, and Project Manager for the expansion project, testified he was unaware of specific rules for grading the site, but noted usually grading was designed to have water run away from the pit. Lampton testified defendant did what it felt it needed to do and was able to control the rainwater until the storm, which Lampton also described as an act of God. Lampton agreed the excavation was defendant's responsibility, but disagreed defendant was obligated to protect the building. Lampton contended defendant's dewatering efforts were sufficient, and defendant would not have been able to do anything differently to protect the building from the storm because of the storm's scale.

Tomczak was a Project Manager for this project. Christman was the Construction Manager for the project, not the general contractor, and did not perform any work itself. Tomczak testified Christman was not responsible for the water damage because the storm and resulting flood was an unexpected act of God, and did not recall any complaints or issues Christman had with defendant's dewatering efforts.

Jeffrey White was the project's Superintendent. Jeffrey White walked the expansion site every day to inspect and make sure everything was put away each day, and the pumps used to drain the pit were plugged in. Jeffrey White received notice of the flooding, returned to the site, and called for assistance to handle the rain, which he referred to as a biblical event. Despite the clogged pumps, however, Jeffrey White testified defendant did a decent job of placing the pumps in a way to mitigate clogging by mud. Jeffrey White had no concerns regarding the grading of the site before the storm because it was done properly for "[a] normal rain[.]" Jeffrey White explained the catch basins at Oakland University were designed to handle a 10-year storm, and eventually the rain overwhelmed the storm drains and catch basins, ultimately flowing back into the pit.

Jeffrey White usually checked the weather daily and had his phone set to receive weather warnings and advisories, but did not recall receiving any flood warnings the day of the storm. Had Jeffrey White known the storm was coming, he would not have taken any additional measures,

because defendant's dewatering efforts were adequate. Jeffrey White contended defendant was responsible for the means and methods of protecting the building from damage.

Wolf testified defendant's creation of the low point of the pit next to the building was improper. Wolf was unable to identify a specification or contract provision forbidding defendant from locating the low point of the pit next to the building, but opined the low point's placement and improper dewatering techniques caused the water damage. Regarding defendant's obligation to keep the pit dewatered "as necessary," Wolf explained defendant was the one to determine what was necessary. Wolf confirmed the subcontract did not require defendant's dewatering system to handle a specific volume of water. Wolf further confirmed the project never specified the storm level for which it should be designed, nor did the bidding documents.

Wolf disagreed the storm was unpredictable. Wolf had no reason to argue whether Tomczak had any issue with defendant's dewatering efforts, and did not dispute there were no complaints by Christman against defendant before the storm. Wolf disagreed with Tomczak's testimony that even if there were multiple pumps it would not have made any difference. Wolf explained that in his opinion, a larger, gas-powered pump, outside the pit, would not encounter the same difficulties in dewatering the pit suffered by the smaller, electric pumps used by defendant. However, Wolf confirmed there was no specification regarding the volume of rainwater for which defendant had to prepare or what size pumps defendant needed to use, explaining it was "based on experience and risk assessment." Wolf also believed there were methods of sloping and grading, which could have prevented the water from reaching the building.

Defendant obtained an expert report on the water damage, which determined: "[W]hen[] the extraordinary and unexpected rain event occurred . . . , the rainwater overwhelmed the excavated area and seeped into the [building] through the door and exhaust damper." The report stated the pump in the pit was "operational at all times during the project both during work operations and after hours," and there was "nothing improper with the implementation of [defendant's] dewatering arrangement on the night of the incident." The report noted Oakland University's storm drain system was unable to handle the amount of water from the storm, because it was only designed to handle a 10-year storm. The report determined it was impossible for defendant to have made a dewatering system with a higher capacity than the storm drains to which it drained, and it was also impossible for defendant to predict the level of rainfall that occurred during the storm, especially considering the late weather advisory.

Defendant also procured a meteorologist report, which agreed the NWS forecasted storms for Oakland County the day of the storm, but asserted, while the storm itself was not a surprise, the large amount of rainfall around Oakland University was. The report stated the NWS never issued a flood watch or flood warning, and, by the time it issued the flood advisory, the storm had already hit Oakland University.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10). Defendant argued it did not breach its subcontract because it complied with all the specifications listed in the subcontract. Defendant noted Oakland University never filed any complaints concerning defendant's work before the storm, and all defendant's work was overseen by Christman's employees, who did not have any issues either. Defendant stated the only requirement under the subcontract was for defendant to dewater the pit "as necessary," and the testimonies of Christman's

employees indicated this requirement was satisfied. Defendant also argued Oakland University waived any breach-of-contract claim it had when it tendered final payment to Christman, and plaintiff, as subrogee of Oakland University, was bound by Oakland University's waiver.

Plaintiff responded, arguing defendant breached its contractual duties to plaintiff by failing to properly dewater the pit, because the subcontract required defendant dewater the pit "as necessary," which it failed to do. Plaintiff asserted defendant, in the face of the foreseeable storm, should have used gas pumps and continuously monitored them through the storm. Plaintiff asserted the site should have been properly graded to lead the water away from the pit, and defendant had a duty to protect the building from damage caused by worksite operations. Plaintiff also argued Oakland University did not waive its claim against defendant, because the waiver provision did not apply to defendant, and did not mention its applicability to subcontractors. Plaintiff further contended an exception to the waiver provision applied, because defendant's work failed to comply with the specifications of the contract documents.

The trial court issued its opinion and order granting summary disposition to defendant, concluding no genuine issue of material fact existed as to whether defendant breached its subcontract. The trial court focused on the lack of complaints from Christman and the insufficiency of Wolf's testimony. The trial court did not address defendant's waiver claim.

## II. ANALYSIS

Defendant moved for summary disposition under MCR 2.116(C)(8) and (10). However, the trial court failed to indicate in its order which subrule it applied when granting defendant's motion. When a trial court does not indicate the subrule it applied when ruling on a motion for summary disposition, but considered documentary evidence outside the pleadings, this Court evaluates the motion as if it was granted under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

This Court reviews "a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10) de novo." *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 777; 910 NW2d 666 (2017). "A motion under [MCR 2.116(C)(10)] tests the factual sufficiency of the complaint." *Id.* (quotation marks and citation omitted). A trial court, in evaluating a motion for summary disposition under MCR 2.116(C)(10), "considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id.* (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Co*, 469 Mich 177, 183; 665 NW2d 468 (2003). "[A] trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10)." *Id.*

When deciding the motion for summary disposition, the trial court took issue with Wolf's testimony regarding what procedures defendant could have used, choosing instead to rely on the testimony of Jeffry Tomczak and Jeffrey White. As a consequence, the trial court engaged in an impermissible weighing of the evidence, contrary to case law from this Court. See, *Pioneer State Mut Ins Co*, 301 Mich App at 377.

The trial court was correct in finding that defendant's duties regarding dewatering the pit were not extensively defined in its subcontract. While the subcontract required areas be dewatered "as necessary," plaintiff's arguments on appeal imply defendant breached its duty by failing to provide effective preventative measures for flooding before the storm, not that defendant failed to dewater the pit after the storm. Further, the trial court found that Wolf had improperly based his opinion on nonexistent evidence.

Our review of the record leads us to conclude that the trial court erred in its finding that Wolf manufactured facts not in evidence. Unlike the trial court, we cannot find evidence that Wolf asserted facts contrary to those in evidence, or disagreed with Tomczak's and White's layperson observations of the storm, when he asserted what he believed were the proper methods for dewatering. While Wolf lacked sufficient knowledge regarding many portions of the record, his assertion that gas-powered pumps outside the pit would be more effective than the electric pumps defendant placed inside the pit was not contrary to the factual evidence that defendant used electric pumps at the site. Similarly, Wolf's assertion defendant should have graded the inside of the pit and located the pit's low point further from the building was not contrary to the evidence that the sloping was done on the outside of the pit and the low point of the pit was located next to the building.

Further, Wolf's failure to point to a specific provision in the subcontract specifying what type of dewatering system defendant needed to use was irrelevant. As Wolf explained, the absence of any direction in the subcontract meant the means and methods of dewatering were left to defendant's discretion, and defendant's decision was grounded in its analysis of the risks involved from different dewatering methods. Indeed, the subcontract provided defendant with discretion regarding the means and methods of its work. Wolf did not assert defendant was contractually obligated to use a specific dewatering system, he alleged defendant's system of choice was insufficient and could not keep enough water out of the pit during the storm, and, as a result, defendant breached its contractual duty to keep the pit dewatered "as necessary."

Defendant's witnesses asserted Christman had no problem with the methods used by defendant. Wolf did not refute this testimony. Further, the record reveals that defendant submitted an expert report which indicated defendant's dewatering system was adequate. In contrast, Wolf contended the system was insufficient, and proposed other methods defendant could have used to further protect the pit. Such contradictory evidence created a genuine issue of material fact. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183. Had the trial court properly viewed the evidence in the light most favorable to the nonmoving party, *Candler*, 321 Mich App at 777; it would have concluded that a genuine issue of material fact existed regarding whether defendant's dewatering system was adequate. Because a genuine issue of material fact existed regarding the adequacy of defendant's dewatering system, a

genuine issue of material fact also existed as to whether defendant kept the pit dewatered "as necessary" under the subcontract, after its dewatering system was overwhelmed by the storm.[2]

Defendant's additional argument that the subcontract constitutes a satisfaction contract, and the "as necessary" language required only that defendant's dewatering efforts be acceptable to Christman, is unpreserved. Defendant did not properly raise this argument before the trial court, and there is no indication consideration of this argument will prevent manifest injustice or is necessary for properly determining the case. *Gen Motors*, 290 Mich App at 387. Additionally, this argument calls for a factual, not legal, consideration, and is therefore not properly considered by this Court. *Id.* Therefore, this Court will not consider this argument.

Defendant also asserts plaintiff is unable to maintain its claim because Oakland University waived its right to file suit when it tendered final payment to Christman. The relevant contractual language follows:

> 2. Completion and Final Payment
>
> *   *   *
>
> B. The making of Final Payment shall constitute a waiver of all claims by the Owner except those arising from: (1) unsettled liens or bond claims; (2) faulty or defective Work discovered and/or appearing after completion; (3) failure of the Work to comply with the requirements of the Contract Documents; (4) terms of any special or extended warranties or guarantees required by the Contract Documents; or (5) the obligations of the Construction Manager under the indemnification provisions hereof.

The subcontract's reference to this provision is also provided again:

> 1. All terms, conditions and requirements of the Main Contract between the Owner and the Contractor . . . including but not limited to its contract documents, but specifically excluding payment and dispute resolution provisions, are incorporated herein and made a part of this Agreement.

Defendant's subcontract explicitly excludes the payment and dispute provisions of Christman's contract with Oakland University, and nowhere in the language of the original clause does it state payment constitutes a waiver of all claims against all parties, including those not party to the contract. Defendant is correct Oakland University's final payment would waive all its claims against Christman, but the subcontract does not provide defendant with the same protection, and,

---

[2] Having concluded that a genuine issue of material fact exists regarding whether defendant breached its contractual duties on this basis, and the trial court not addressing the foreseeability of the storm in its opinion, this Court does not address the parties' argument concerning whether the storm was predictable.

in fact, explicitly excludes the payment and dispute resolution provisions. Furthermore, even if the clause did apply to defendant, a genuine issue of material fact exists as to whether the third exception to the provision applies to plaintiff's claim, because a genuine issue of material fact exists as to whether defendant used an adequate dewatering system, and therefore whether defendant dewatered the pit "as necessary."

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro
/s/ Noah P. Hood