*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OLIVER BAKEMAN,

        Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

        Defendant-Appellee,

and

CITIZENS INSURANCE COMPANY OF
AMERICA, HANOVER INSURANCE COMPANY,
and MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendants.

FOR PUBLICATION
November 10, 2022
9:00 a.m.

No. 357195
Macomb Circuit Court
LC No. 2019-005246-NF

Before: RONAYNE KRAUSE, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

In this action under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant.[1] On appeal, plaintiff argues that the trial court erred when it concluded plaintiff knowingly signed and submitted false claims regarding personal protection insurance (PIP) benefits, and that the trial court erred when it granted summary disposition in favor of defendant because there was no issue of material fact that plaintiff committed a fraudulent insurance act. We affirm.

---

[1] Citizens Insurance Company of America, Hanover Insurance Company, and the Michigan Automobile Insurance Placement Facility ("MAIPF") were originally named defendants. The trial court dismissed those defendants from this case.

-1-

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was the passenger in a car driven by his then-wife, Lakeisha Bakeman, on February 23, 2019, when that car was involved in a single-vehicle accident.  Plaintiff was severely injured in the accident.  Neither plaintiff nor Lakeisha had a no-fault insurance policy, so plaintiff sought and received personal protection insurance (PIP) benefits through the Michigan Automobile Insurance Placement Facility ("MAIPF"), which were administered by defendant.

Following the accident, plaintiff was hospitalized for approximately six weeks, following which he was prescribed "attendant care and house care 7 days per week, 12 hours per day."  An acquaintance referred plaintiff to Joe Awada, the owner of Five Star Comfort Care, for physical therapy services.  Awada arranged for attendant care services to be provided to plaintiff and performed by his then-mother-in-law, Lura Watson.  Defendant allegedly paid some of the bills that plaintiff incurred for the treatment, but it then stopped paying altogether.  Plaintiff brought suit, alleging that defendant was obligated to pay for plaintiff's PIP benefits under the No Fault Act, MCL 500.3101 *et seq.*

Plaintiff testified at a remote video deposition that was plagued by connectivity issues and difficulties with the participants understanding each other.  Plaintiff testified that Watson provided attendant care services for plaintiff eight hours a day, five days per week from March 29, 2019 through May 31, 2019.  He explained that Awada gave Watson claim forms to fill out and instructed her how to do so, and Watson completed the forms.  Plaintiff attended physical therapy weekly at Five Star Comfort Care's clinic, at which time he collected the forms from Watson and took them to the clinic.  He was "not sure" whether he reviewed the contents of the forms before taking them.  The claim forms submitted to defendant, via Awada, claimed 12 hours of care a day, 7 days a week, during that period.  Plaintiff's signature was on those forms.  He testified that he did not sign any of the forms, and he answered "I believe so" when asked whether his signature had been copied onto the forms by someone else.  However, that was not the end of the matter.

Shortly thereafter, he agreed that it was indeed his signature on the forms.  At the same time, he was asked whether he had dated an example form, which he also initially believed he had.  However, defendant's counsel then noted that the dates on the form he was shown had all seemingly been written by someone else's hand, and plaintiff did not know who placed the dates there.  Plaintiff was then asked,

> *Q*.  But you know that you signed this – is that your actual signature or is that the one you said that they copied and put on they're?  [*sic*]
>
> *A*.  Yes, that's my signature, yeah.

Shortly thereafter he again affirmed that it was "my signature" on a form.  Finally, near the end of his deposition, he was asked,

> *Q*.  So just so I'm clear, when you saw those forms and you saw the signature at the bottom that you said was yours, do you know how that signature got on those forms?
>
> *A*.  I put it there.

*Q.* So you signed and dated those forms as you submitted them to Joe?

*A.* Yes.

Plaintiff's counsel did not follow up on the topic of plaintiff's signature.

Defendant subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that, by knowingly signing the inaccurate claim forms and submitting them to Awada, plaintiff committed a fraudulent insurance act that voids his claim for PIP benefits. Plaintiff argued that the trial court, which was required to view the evidence in the light most favorable to him for the purposes of the motion, should have assumed that he did not sign the forms on the basis of his testimony. Therefore, plaintiff argued, the trial court should have concluded he did not commit a fraudulent insurance act and he is entitled to PIP benefits. The trial court disagreed and granted summary disposition in favor of defendant. Plaintiff appeals that ruling.

## II. STANDARD OF REVIEW

A trial court's determination on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists when the record presents an issue of fact over which reasonable minds may differ. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation omitted).

## III. FRAUDULENT INSURANCE ACT

Entitlement to benefits through the MAIPF is governed by MCL 500.3173a. At the time of the accident and during the period during which plaintiff received attendant care from Watson, MCL 500.3173a(2) provided:[2]

A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that

---

[2] The statute was amended by 2019 PA 21, effective June 11, 2019. The 2019 amendment to the no-fault act, MCL 500.3101 *et seq.*, is not retroactive. See *Andary by & through Andary v USAA Cas In Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487). This provision is now located at MCL 500.3173a(4), and it has only been changed in ways that are not relevant to this appeal.

contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment or benefits under the assigned claims plan.

This Court has explained that a person commits a fraudulent insurance act when:

> (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [*Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 780; 910 NW2d 666 (2017) (footnote omitted).]

The statute does not require the false statement to be submitted to any particular person or entity so long as it supports a claim to the MAIPF. *Id*. There is no dispute, at least for purposes of summary disposition, that the claim forms in support of plaintiff's claim for no-fault benefits were submitted to the MAIPF and that those forms contained false information concerning facts relevant to the claim.

Plaintiff argues that there is no evidence he had any intent to defraud the MAIPF or defendant. However, the statute unambiguously establishes that the only scienter requirement is mere knowledge "that the statement contains false information concerning a fact or thing material to the claim." Although the word "fraudulent" might have other connotations in other contexts, where a statute provides its own definition of a word, the statute's definition alone must be applied. *Tryc v Mich Veterans' Facility*, 451 Mich 129, 135-136; 545 NW2d 642 (1996); see also *Candler*, 321 Mich App at 780 n 6. Plaintiff's subjective intent is therefore irrelevant. Rather, the critical concern is whether plaintiff knew that false material information had been provided.

Plaintiff argues that the errors in the forms were immaterial. First, he argues that he did, in fact, receive the total amount of care set forth in the forms, although some of it was provided by his then-wife instead of Watson. However, in *Candler*, the plaintiff submitted forms indicating that he received services from his brother, but in fact he received some of the services from his girlfriend, and this Court squarely rejected the proposition that the discrepancy was immaterial. *Candler*, 321 Mich App at 776, 781-782. The identity of the service provider was material to plaintiff's claim. Secondly, plaintiff argues that a small number of isolated inaccuracies cannot amount to the kind of fraudulent insurance act that voids an entire claim. We leave for another day whether that argument might have merit, because the inaccuracies in this case were extensive. Every daily claim form contained false information from March 29, 2019, through May 15, 2019. The forms from May 16, 2019 through May 31, 2019 accurately claim Watson provided eight hours a day of care, but they also spanned two weekends in which no care was provided. The MAIPF was effectively billed for more than twice as many hours of services than were actually provided, which cannot be considered an immaterial discrepancy.

Plaintiff also argues that he did not sign the forms, nor did he review the forms after they were filled out. He therefore maintains that he either did not know the forms contained incorrect information or he did not cause the forms to be presented. Regarding the former argument, "the law is clear that one who signs an agreement, in the absence of coercion, mistake, or fraud, is presumed to know the nature of the document and to understand its contents, even if he or she has

-4-

not read the agreement." *Lease Acceptance Corp v Adams*, 272 Mich App 209, 221; 724 NW2d 724 (2006). Plaintiff testified that the forms were filled out by Watson at the direction of Awada. He did not testify that he was induced to sign the forms on the basis of coercion, mistake, or fraud. Therefore, *if* plaintiff signed the forms, he cannot rely upon a lack of knowledge of the forms' contents. In other words, *if* plaintiff signed the attendant care forms, then he committed a fraudulent insurance act. Furthermore, plaintiff testified that he personally delivered the forms to Five Star Comfort Care, so he certainly had the opportunity to review them.[3] However, whether plaintiff signed the forms merits further discussion, which we address below.

## IV. SELF-CONFLICTING TESTIMONY

It is well established that a party or witness may not manufacture a question of material fact by directly contradicting the person's own deposition testimony with an affidavit. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480-482; 633 NW2d 440 (2001). The rationale is derived from *Gamet v Jenks*, 38 Mich App 719, 726; 197 NW2d 160 (1972),[4] which observed that

> Deposition testimony damaging to a party's case will not always result in summary [disposition]. However, when a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in the absence of any explanation or modification, or of a showing of mistake or improvidence. The purpose of [the predecessor court rule regarding summary disposition] is to allow the trial judge to determine whether a factual issue exists. This purpose is not well served by allowing parties to create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition. [(citations omitted).]

Consistent with this rationale, a party may provide an affidavit to explain, clarify, or expand upon deposition testimony, especially where the deposition testimony was not unequivocal. *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 312-313; 600 NW2d 664 (1999).

This Court has had less opportunity to address the implications of an internal conflict within a single deposition. Several principles counsel against applying a "bright line" rule favoring

---

[3] Plaintiff has also argued that summary disposition was improper because any alleged fraud should be determined by the jury as a factual question, relying upon *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 727; 957 NW2d 858 (2020), in which this Court stated, "[o]nce suit is brought, what is truth and what is false are matters for a jury or a judge acting as fact-finder." However, that statement must be considered in context: in *Haydaw*, this Court held that allegedly false statements made during the course of litigation cannot retroactively justify voiding an insurance policy. *Id*. at 726-730. Nothing in *Haydaw* purported to overturn longstanding principles regarding summary disposition where reasonable minds could not differ as to what the evidence reveals.

[4] Although *Gamet* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

either the testimony favorable to the deponent or the testimony damaging to the deponent. Importantly, in the absence of a formal stipulation, a party is ordinarily entitled to the benefit of testimony in support of that party, "even when there are inconsistencies or contradictory statements in the testimony of plaintiff or her witnesses," and even "despite [the party's] expression of an opinion inconsistent therewith." *Ortega v Lenderink*, 382 Mich 218, 223; 169 NW2d 470 (1969) (quotation omitted). Furthermore, the rule regarding conflicts between depositions and affidavits was designed to prevent parties from manufacturing factual questions for the purpose of surviving summary disposition. A single individual, testifying at a single deposition, is less likely to be trying to thwart a procedural rule, especially where that individual demonstrated a lack of guile. We are, in any event, unaware of any reason why the courts should presume as a matter of course that either of two arguably contradictory statements, whether supporting or damaging the deponent or a party, is "the true one." Rather, we adopt a case-by-case approach when analyzing arguably inconsistent deposition testimony.

## V. PLAINTIFF'S DEPOSITION TESTIMONY

As an initial matter, we observe that it was never disputed that the signatures on the attendant care claim forms belonged to plaintiff; at issue was only how those signatures got onto the forms. Furthermore, from reviewing plaintiff's deposition testimony as a whole, we do not believe plaintiff intended to manufacture an internal conflict, and we do not believe plaintiff intended to misrepresent any facts. Rather, it is plainly apparent that plaintiff was not a sophisticated party, and any conflicting testimony was the product of confusion, some of it undoubtedly due to the remote connection problems and some of it undoubtedly due to poorly-crafted questions posed by counsel. As such, some stray, conflicting statements would not be unexpected. We conclude that, when the testimony is reviewed as a whole, and the remainder of the record is also considered, reasonable minds could not differ that plaintiff actually signed the attendant care forms.

As discussed above, plaintiff first denied having signed any of the forms, expressing the belief that someone else had copied his signature onto the forms. At the end of his deposition, he unequivocally stated that he put his signature on the forms. Throughout the deposition, he otherwise maintained that it was indeed his signature on the forms. Notably, he initially denied signing *any* of the forms, but he was later asked to clarify whether the signature on a particular exemplar form was "[his] actual signature or . . . the one [he] said that they copied," and he affirmed that it was "[his] signature." Although that question could have been better articulated, we have also reviewed the actual attendant care claim forms, which resolve any possible lingering doubts. Notably, plaintiff never claimed his signatures were forged—rather, he consistently maintained that the signatures were his. Each of plaintiff's signatures on the forms features the kind of slight variations indicative of signing each one individually; signatures that had been copied would, obviously, all be identical. Furthermore, several of the signatures intersect the signature-line, rendering it difficult to imagine how they could have been copied onto the forms. Finally, plaintiff never took the opportunity to provide any further clarification at the end of his deposition, and he never offered any evidence, from an expert or otherwise, to substantiate his speculation that his signature had been copied.

The trial court's orders do not entirely reveal the trial court's thought process leading to the conclusion that plaintiff signed the forms. If the trial court drew that conclusion strictly

because plaintiff said that he signed the forms at one point in his testimony, without considering the fact that plaintiff also made a statement to the contrary, the trial court erred in its reasoning. However, upon review of the deposition and the record, we are convinced that the trial court, for whatever reason, arrived at the correct conclusion: reasonable minds could not differ that plaintiff personally signed the attendant care claim forms.

## VI. CONCLUSION

We conclude that, where a deponent's testimony is inherently self-contradictory, a court may not, at the summary disposition stage of proceedings, blindly assume that one statement is true and the other is false. In the absence of an objective basis for concluding that one or the other of the statements *must* have been the true statement, doing so constitutes an impermissible credibility assessment. We also conclude that if plaintiff actually signed the attendant care forms under circumstances that did not involve coercion, mistake, or fraud, then it is immaterial whether he read those forms, and he committed a fraudulent insurance act for purposes of MCL 500.3173(4). Under the circumstances, and after careful review of the entire deposition and of the record, we conclude that plaintiff's seemingly self-contradictory deposition testimony can only be resolved with the determination that plaintiff did personally sign the forms. He therefore committed a fraudulent insurance act, and summary disposition was properly granted in favor of defendant.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle

-7-