*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATRICE LUCHIE,

       Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

       Defendant-Appellee,

and

KAELLA SHANNA WINN,

       Defendant.

UNPUBLISHED
November 30, 2023

No. 362230
Wayne Circuit Court
LC No. 21-005252-NI

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Plaintiff Latrice Luchie appeals as of right the June 2022 default judgment against defendant Kaella Shanna Winn with respect to Luchie's third-party automobile negligence claim against Winn. On appeal, however, Luchie challenges the trial court's February 2022 order granting summary disposition under MCR 2.116(C)(10) to defendant Citizens Insurance Company of the Midwest (Citizens) on her first-party no-fault claim against Citizens. We affirm.

## I. BACKGROUND

This case arises out of an August 2020 motor vehicle collision and Luchie's later application for no-fault benefits. In late August 2020, Luchie drove southbound on Conner Street in Detroit, just south of the intersection with Minden Street. At the time, Winn was driving northbound on Conner. Winn crossed the center line and collided head-on with the rental vehicle Luchie was driving at the time. According to the traffic crash report, Luchie declined medical care at the collision scene.

-1-

Medical records from after the accident (in August 2020 and October 2020), indicate that Luchie complained of pain in her neck, elbow, abdominal area and, particularly relevant here, in her back and right knee. In November 2020, Luchie applied for first-party no-fault benefits through the Michigan Assigned Claims Plan (MACP) maintained by the Michigan Automobile Insurance Placement Facility (MAIPF). In response to a question on the MACP application form asking her to describe her injuries from the August 2020 accident, Luchie wrote: "Back pain, neck pain, stomach pain." She checked "No" in response to question 23b, which asked whether she suffered from any of these injuries before the accident. In response to question 27, which asked for a list of medical conditions or medication taken before the accident, she listed only "Thyroids." Luchie also failed to respond to question 42, which asked whether she was eligible for benefits under any other wage- or salary-continuation plan. On November 2, 2020, Luchie signed the application, acknowledged that she had reviewed the entire application, and attested that the information in it was true and accurate. After Luchie submitted her application, MAIPF assigned her no-fault claim to Citizens.

In late April 2021, Luchie sued Citizens for first-party no-fault benefits after it failed to pay her benefits. She also asserted a third-party automobile negligence claim against Winn. Citizens answered Luchie's complaint in late May 2021, denying liability and asserting several affirmative defenses, including, relevant here, that any false statement made in the course of Luchie's claim for benefits would render her ineligible for those benefits. During discovery, Luchie responded to Citizens' interrogatories and indicated that she suffered "back pain, stomach pain, neck pain, and reaggravated knee pain which resulted in a meniscus tear" as a result of the August 2020 accident.

In early December 2021, Citizens moved for summary disposition under MCR 2.116(C)(10). Relevant here, it argued that while pursuing her claim for benefits, Luchie made several material, false statements, rendering her ineligible for no-fault benefits under MCL 500.3173a(4). Specifically, Citizens claimed Luchie misrepresented her medical history and purposefully omitted disability coverage she was receiving at the time of the accident. In early February 2022, Luchie responded to Citizens' motion. Urging the court to reject Citizens' request for summary disposition, Luchie argued that she did not knowingly provide false information in her benefits application and was not trying to conceal her medical history in her discovery responses.

On February 24, 2022, the trial court held a hearing on Citizens' dispositive motion. There, the court found that "no reasonable juror could find other than that [Luchie] was hiding her past medical history," noting her history of a torn meniscus and her disability insurance through Unum Life Insurance Company (Unum) at the time of the accident. On February 25, 2022, the trial court entered an order consistent with its ruling on the record. In its order, the court stated that because of false statements made during the course of her claim for benefits, Luchie was ineligible for benefits under MCL 500.3173a(4). In mid-March 2022, Luchie moved for reconsideration, arguing that she did not commit a fraudulent insurance act. The trial court denied reconsideration on March 28, 2022, concluding that Luchie "present[ed] nothing that the Court did not previously consider" in deciding Citizens' summary-disposition motion.

In early June 2022, Luchie moved for a default judgment against Winn for failure to answer Luchie's complaint and noting that the court entered a default against Winn in late April 2022. On

June 28, 2022, the trial court granted Luchie's motion for a default judgment against Winn. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo questions of law related to our jurisdiction. *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009). We also review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. Such a motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. APPELLATE JURISDICTION

As an initial matter, Citizens argues that we lack jurisdiction over this appeal as of right because Luchie did not file a timely claim of appeal. It asserts that the February 25, 2022 order granting summary disposition to Citizens was the final order in the case with respect to Citizens and that Luchie failed to timely appeal from that order or the March 28, 2022 order denying reconsideration. We disagree.

Under MCR 7.203(A)(1), this Court's jurisdiction is limited to appeals from circuit court orders that are defined as final in MCR 7.202(6). Relevant here, a "final order" is "the first . . . order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." MCR 7.202(6)(a)(*i*). In actions involving multiple claims or parties, an order "adjudicating fewer than all the claims, or the rights and liabilities of fewer than all the parties, does not terminate the action as to any of the claims or parties," and is therefore not a final order appealable by right. MCR 2.604(A). The time for filing an appeal of right is jurisdictional and a "failure to comply with the timing requirements for an appeal as of right deprives this Court of jurisdiction to consider the appeal as of right." *Chen*, 284 Mich App at 192-193. Under MCR 7.204(A)(1), an appellant must file an appeal of right within 21 days after entry of the order appealed from or within 21 days after entry of an order deciding a timely motion for postjudgment relief.

Luchie appealed from the June 28, 2022 default judgment, but challenges the trial court's February 25, 2022 order granting summary disposition to Citizens. Citizens asserts that the February 25, 2022 order granting summary disposition was the final order in the underlying case, and, accordingly, Luchie had to appeal from either that order or the March 28, 2022 order denying reconsideration. Because she did not do so, Citizens argues, she did not timely appeal and this Court therefore lacks jurisdiction over this appeal as an appeal of right.

We disagree. Citizens was not the only defendant in this matter; Luchie also sued Winn. Despite entry of the February 25, 2022 order granting summary disposition to Citizens and the March 28, 2022 order denying reconsideration, Luchie's claim against Winn remained pending. The trial court's June 28, 2022 order granting default judgment against Winn resolved Luchie's

claim against Winn. The June 28, 2022 order is thus the final order under MCR 7.202(6)(a) and "[a] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (quotation marks and citation omitted). Because Luchie timely filed a claim of appeal from the June 28, 2022 order, she is free to raise issues on appeal related to the February 25, 2022 order granting summary disposition to Citizens. This Court therefore has jurisdiction over this appeal.

## IV. FALSE STATEMENTS IN APPLICATION FOR NO-FAULT BENEFITS

Luchie argues that the trial court erred in granting summary disposition to Citizens on her first-party no-fault claim, asserting that she did not submit false statements in support of her claim for no-fault benefits. We disagree.

MCL 500.3173a(4) governs fraudulent insurance acts and provides:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility, or to an insurer to which the claim is assigned under the assigned claims plan, for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [MCL 500.4503] that is subject to the penalties imposed under [MCL 500.4511]. A claim that contains or is supported by a fraudulent insurance act as described in this subsection is ineligible for payment of personal protection insurance benefits under the assigned claims plan.

A "fraudulent insurance act" includes both acts and omissions. See MCL 500.4503.

An individual commits a fraudulent insurance act under MCL 500.3173a when they "present[] or cause[] to be presented an oral or written statement" that is "part of or in support of a claim for no-fault benefits" and "the claim for benefits is submitted to the MAIPF." *Candler v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017).[1] The person "must [also] have known that the statement contained false information" and the statement must have "concerned a fact or thing material to the claim." *Id*. at 780. Post-*Candler*, the Legislature amended MCL 500.3173a, "clarify[ing] that the statute applies to statements presented in support of a claim to the MAIPF or 'to an insurer to which the claim is assigned under the assigned claims plan.' " *Williamson v AAA of Mich*, ___ Mich App ___, ___; ___ NW2d ___

---

[1] "When *Candler* was decided, the language currently found in MCL 500.3173a(4) was found in MCL 500.3173a(2). The prior language was largely unchanged by the 2019 amendments, except for the clarifying language discussed above." *Williamson*, ___ Mich App at ___ n 6; slip op at 5 n 6, citing 2019 PA 21. "Thus, the rule of law announced in *Candler*—the interpretation of a 'fraudulent insurance act' under MCL 500.3173a—controls." *Williamson*, ___ Mich App at ___ n 6; slip op at 5 n 6.

(2022) (Docket No. 357070); slip op at 5, lv pending, quoting MCL 500.3173a(4). See 2019 PA 21.

MCL 500.3173a(4) does not require proof of a subjective intent to defraud. *Bakeman v Citizens Ins Co of the Midwest*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357195); slip op at 4. "[T]he statute unambiguously establishes that the only scienter requirement is mere knowledge 'that the statement contains false information concerning a fact or thing material to the claim.' " *Id*. at ___; slip op at 4. "[T]he fraudulent insurance act provision in MCL 500.3173a does not," however, "apply to statements made after litigation has ensued." *Williamson*, ___ Mich App at ___; slip op at 8. This is because "MCL 500.3173a(4) exclusively uses the word 'claim' to describe a fraudulent insurance act that bars an individual from receiving [no-fault] benefits through the MACP." *Id*. at ___; slip op at 7. "False statements submitted during discovery, after an *action* for recovery has been filed, are not," however, "statements offered in support of a *claim* to the MAIPF or the assigned insurer." *Id*. at ___; slip op at 7. That is, "a false statement made in a filing submitted during discovery is not a statement made to the MAIPF or to an assigned insurer," and is instead "made to the court." *Id*. at ___; slip op at 9. The court rules authorize a trial court to impose sanctions for discovery violations in specific circumstances. *Id*., citing MCR 2.313. "[A]n insurer may [thus] have recourse for a false statement made during discovery, but it is not dismissal of the claim under MCL 500.3173a." *Williamson*, ___ Mich App at ___; slip op at 9. If, however, evidence of a fraudulent insurance act is discovered after litigation begins, and the false statement was made during the prelitigation claims stage, that evidence may be considered in determining whether dismissal is required under MCL 500.3173a(4). *Williamson*, ___ Mich App at ___ n 8; slip op at 9 n 8.

In seeking summary disposition, Citizens relied on alleged false statements made in Luchie's application for no-fault benefits that she submitted to the MAIPF and in discovery responses after litigation began. These included describing her injuries as just back, neck, and stomach pain, checking "No" in response to whether she suffered from any of these injuries before the accident, and listing only "Thyroids" in response to a question about other pre-accident medical conditions or medication. It also included her failure to respond to a question regarding her eligibility for benefits under other wage- or salary-continuation plans. At issue on appeal are her claims of right-knee pain—which she did not list as a pre- or postaccident medical condition—back pain, and her eligibility for benefits under another wage-continuation plan.

## A. RIGHT-KNEE PAIN

We first consider whether Luchie made false statements in her benefits application regarding her right knee. Citizens argues that Luchie made false statements in her benefits application because she failed to disclose that she complained of postaccident right-knee pain and had a long history of right-knee issues. Luchie suggests the absence of her postaccident knee pain from the accident was a mere oversight or that she had not fully determined the extent of her injuries. We agree with Citizens.

It is not disputed that Luchie had a history of right-knee problems before the accident. In her response to Citizens' interrogatories, she stated that her injuries sustained in the accident included "reaggravated knee pain which resulted in a meniscus tear," admitting to prior knee

-5-

issues.[2] In her deposition, Luchie admitted that she had right-knee pain before the accident. When asked about her pre-accident issues with her right knee, Luchie responded, "I have a small tear in the meniscus and the car accident made it worse where I had to have surgery." When asked how she knew that she had a meniscus tear before the accident, Luchie testified that she "had it checked out" by seeing "[a]n orthopedic specialist at Henry Ford." Though they discussed surgery, the surgeon, according to Luchie, ultimately concluded it "wasn't needed" and instead recommended home exercise.

Medical records show that Luchie complained of right-knee pain as far back as 2014. An x-ray taken in 2014 revealed "[m]edial tibial condyle sclerosis and minimal osteophytosis [that] could relate to early osteoarthritis." Medical records from Henry Ford show that in July 2017 Luchie complained of chronic right-knee pain with a "feeling of locking and giving [sic: way] at times." Her doctor diagnosed her with worsening chronic right-knee pain. In early October 2017, her doctor performed an MRI of her right knee, which revealed a radial tear of her medial meniscus and "[d]egenerative cartilage loss" that was "consistent with early osteoarthritis."

In mid-October 2017, after her MRI, Luchie visited an orthopedic specialist who diagnosed her with an "[a]cute meniscal tear of [the] right knee . . . ." The records from that visit indicated that Luchie participated in physical therapy, but it had "made things worse." During a late October 2017 office visit, Luchie requested and received a corticosteroid injection in her right knee. Medical records from October 2017 also show that she and her doctor discussed arthroscopic surgery, though it was not guaranteed to eliminate most of her symptoms. At a late May 2018 office visit, Luchie continued to complain of right-knee pain, describing the severity of the pain as being "8/10."

Medical records show that, in the period between the date of the accident and the date that she signed her application for no-fault benefits, Luchie repeatedly complained of right-knee pain to her medical provider. In her discovery responses during this litigation, Luchie claimed that her injuries from collision included "reaggravated knee pain which resulted in a meniscus tear." She reiterated at her deposition that the August 2020 collision caused a right-knee injury. But, as noted, she failed to include right-knee pain as an injury in her application for no-fault benefits and did not disclose her long history of right-knee issues. Luchie submitted a claim for benefits without disclosing that she complained of postaccident right-knee pain or that she had a substantial history of right-knee problems. The evidence established that she had right-knee issues dating back to 2014 and had consulted numerous doctors for the issue, including a meniscus-tear diagnosis and

---

[2] Luchie's discovery responses support the conclusion that she knowingly made false statements in her prelitigation application for no-fault benefits. As explained earlier, any false statements in the discovery responses are not themselves a basis for dismissal under MCL 500.3173a(4). *Williamson*, ___ Mich App at ___; slip op at 7-9. But, as also explained, a fraudulent insurance act that occurred before litigation began but that is discovered during litigation may be considered in determining whether dismissal is warranted under MCL 500.3173a(4). *Williamson*, ___ Mich App at ___ n 8; slip op at 9 n 8.

discussions about surgery. We therefore conclude that the trial court did not err by granting summary disposition on this issue.

## B. BACK PAIN

Though Luchie argues on appeal that she did not make false statements about her back issues, Citizens contends that she made false statements in her application for benefits with respect to her lower-back pain. We agree with Citizens.

Luchie, in her benefits application, included back pain as one of the injuries she sustained in the August 2020 collision. She confirmed her back injury during her deposition. Luchie did not, however, disclose in her application that she had lower-back pain or issues before the accident. But her medical records reveal that she complained of lower-back pain in 2019. In early April 2019, Luchie went to the emergency room at St. John Macomb-Oakland Hospital complaining of lower-back pain. She reported that a recent foot surgery caused her to walk awkwardly and believed that this was throwing her back out of alignment and contributing to her back pain. Luchie also reported that her podiatrist prescribed her medication to help with her back pain and that she was also taking Flexeril (which did not relieve her symptoms). Luchie further indicated that she went to physical therapy but that it did not help. The emergency room doctor advised Luchie to follow up with a back specialist and prescribed her Motrin, Valium, and Lidoderm patches. Records from Unum indicated that in mid-February 2019, Luchie had "ongoing pain in [her] low back and knee." The Unum records showed that Luchie complained of constant back pain in mid-March 2019, reported in mid-April 2019 that her back was "killing her" and that it was "so painful to walk," and again reported back pain in early May 2019. In her application for benefits, Luchie indicated that the accident caused her to suffer a back injury. Critically, she also explicitly denied suffering from back pain before the accident. Because this was a material, false representation, the trial court did not err by granting summary disposition on this issue.

## C. ELIGIBILITY FOR WAGE-CONTINUATION OR SALARY-CONTINUATION PLAN

Finally, Citizens argues that Luchie made false statements in her benefits application when she omitted information about her eligibility for and receipt of benefits under a wage-continuation plan. We agree.

The evidence established that Luchie was eligible for—and had received—benefits under a wage- or salary-continuation plan, despite her failure to answer a question about this issue in her application for benefits. A fraudulent insurance act under MCL 500.3173a includes omissions. See MCL 500.4503. Luchie was eligible for these benefits through her employer and Unum. Luchie received disability benefits from Unum for the period from December 20, 2018, to May 20, 2019, and again for the period from March 27, 2020, to April 26, 2020. In an early October 2020 letter to Luchie, Unum approved her for disability benefits for injuries stemming from the August 2020 collision—before she signed the application for no-fault benefits in early November 2020.

Luchie's failure to disclose the availability of wage-continuation benefits established that she knowingly provided false information when applying for benefits. See MCL 500.4503. Luchie failed to respond to question 42 of the application form (regarding eligibility for benefits

-7-

under another wage- or salary-continuation plan). Disability benefits were, as discussed, available to Luchie through Unum, she had received those benefits in the past (for other issues before the accident), and she had been approved for them in relation to the accident before she filled out her benefits application. Luchie cannot reasonably contend that her failure to respond to question 42 was a mere oversight. She signed the application and, checking a box, acknowledged that she had reviewed the entire application and attested to the truth and accuracy of the information in it. Absent coercion, mistake, or fraud—none of which are alleged here—a person who signs a document is presumed to know the nature of the document and to understand its contents, even if the person has not read the document. *Bakeman*, ___ Mich App at ___; slip op at 4-5. And because Luchie signed the application, she cannot claim to lack knowledge of the application's contents, such as by claiming that she overlooked or did not read the question that she failed to answer about wage-continuation benefits. See *id*. at ___; slip op at 5 (indicating that if the plaintiff signed the no-fault attendant-care claim forms, then he could not rely upon a purported lack of knowledge of the contents of the forms). Reasonable minds therefore could not differ regarding Luchie knowingly providing false information in her application for no-fault benefits. Because Luchie omitted material information about her eligibility for benefits under another wage-continuation plan from her benefits application, the trial court did not err by granting summary disposition in Citizens' favor on this issue.

In sum, we conclude that the trial court did not err in granting Citizen's motion for summary disposition, since reasonable minds could not differ on the issue of whether Luchie knowingly provided false information in her application for no-fault benefits. When asked to describe her injuries from the collision, she referred to back pain, neck pain, and stomach pain. She did not, however, indicate that she had right-knee pain, even though she had by that point repeatedly complained to her medical provider about right-knee pain after the accident. In her application, she also denied having suffered from any of these reported injuries before the collision. As discussed, however, Luchie's medical records show that she suffered ongoing lower-back pain in 2019 for which she was prescribed multiple medications and underwent physical therapy. She also suffered from chronic right-knee pain that led her to seek medical attention in 2014, 2017, and 2018. For that condition, she underwent an x-ray and an MRI, and her doctor diagnosed her with a torn meniscus. In addition to discussing possible arthroscopic surgery for her knee with her physician, she obtained a corticosteroid injection and attended physical therapy. Even if her failure to include right-knee pain on the application as an injury sustained in the accident excused her from disclosing her prior right-knee issues in response to question 23b, she should have disclosed this history in response to question 27, which asked her about any preaccident medical conditions.[3] And because there is no evidence Luchie suffered from memory issues, we reject any suggestion that Luchie simply forgot her extensive medical history when filling out her benefits application. Information concerning Luchie's preexisting conditions and

---

[3] Luchie asserts that she did not believe her right-knee problem was a medical condition. According to her own deposition testimony, however, Luchie knew that she tore her meniscus before the accident. Reasonable minds could not disagree that a torn meniscus causing chronic right-knee pain qualifies as a medical condition.

availability of wage-continuation benefits was unquestionably material to her claim for no-fault benefits. The trial court did not err by granting Citizens' motion for summary disposition.[4]

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Noah P. Hood

---

[4] Given our conclusion, we need not address the alternative grounds on which Citizens sought summary disposition below.